## CURTIS & GARTSIDE CO. v. PIGG.

No. 2096. Opinion Filed April 4, 1913.

On Rehearing July 22, 1913.

(134 Pac. 1125.)

1. **PLEADING—Judgment on Pleadings.** Under section 5933, Comp. Laws 1909 (Rev. Laws 1910, sec. 5140), a party to an action may be given judgment on the pleadings, even after verdict has been rendered against such party; but in such case the right to such verdict should clearly appear from the status of the pleadings, and where plaintiff has stated a cause of action, and issues are formed by answer and reply, and where the pleadings thereby present material issues of fact, which cannot be determined without evidence aliunde, it is not error to overrule the motion for judgment on the pleadings.

2. **MASTER AND SERVANT—Child Labor Law.** Under section 629, Comp. Laws 1909, (Rev. Laws 1910, sec. 3728, [section 1, Child Labor Law]), no child under the age of fourteen years shall be employed or permitted or suffered to work in any factory, workshop, or at any occupation especially injurious to health or morals or hazardous to life or limb.

3. **SAME.** Under section 630, Comp. Laws 1909 (Rev. Laws 1910, sec. 3729 [section 2, Child Labor Law], children over fourteen and under sixteen years of age may be lawfully employed to do such work as is not dangerous or hazardous, in a room or building where dangerous machinery is being operated, but they shall not be employed nor permitted nor suffered to operate nor assist in operating any dangerous machinery, nor to oil nor assist in oiling any circular bandsaws while in motion.

4. **SAME—"Employed"—"Permitted"—"Suffered."** The purpose of the child labor law is to positively prohibit children under the

Curtis & Gartside Co. v. Pigg.

ages designated from being employed, permitted, or suffered to engage in occupations that are injurious to health or morals, or hazardous to life or limb, and, in the general plan of prohibition, the terms "employed," "permitted," and "suffered," are each given a distinct office, with the full meaning and significance given such terms in common usage, and mean that children shall neither be employed by contract, nor permitted by acquiescence, nor suffered by a failure to hinder.

5.    SAME—Injury to Servant—Actionable Negligence. Where a minor over fourteen and under sixteen years of age is employed to do such work as the law authorizes his being employed to do, in a room where circular bandsaws and dangerous machinery are being operated, it is negligence for which the master is liable for the injuries resulting, for a 'vice principal to direct or negligently permit or suffer such minor to oil or assist in oiling such machinery while in motion, although the contract of employment may be lawful.

6.    SAME—Liability of Master. Under a contract between his father and the vice principal of a sash and door factory, a boy fourteen years of age is employed to sweep out and do such other things as the law permits his being employed to do in a factory where dangerous machinery is being operated. The boy knows nothing of the terms of the contract, nor what he is supposed to do or to be forbidden to do. He is placed by his father under the care and supervision of the vice principal. The vice principal gives him no instruction as to what he shall do or not do, gives him no warning as to the dangers of the machinery, and fails to admonish him not to assist in oiling or operating same, but turns him over to a foreman, without giving the foreman any instructions in reference to the boy, but leaves the matter of instructions altogether to the foreman. The foreman orders the boy to assist a man who is operating a system of bandsaws, and instructs him to do whatever the operator tells him to do. The operator tells him to oil the saws while in motion. In so doing his hand is cut off by a saw. In such case the master is liable for failure to exercise the degree of care required by statute.

7.    TRIAL—Instructions—Cure of Error. (a) Although a single paragraph of a charge, standing alone, may not fully state the law, if in the entire charge, construed as a whole, the law is fairly and fully stated, the judgment will not be reversed.

        (b) Where the material issues involved are stated in preceding paragraphs of the charge with such clearness as to enable the jury, without reference to the petition, to know what the material issues are and what issues are to be determined, a judgment will not be reversed merely because in a succeeding paragraph the court uses the language, "provided you find that plaintiff has established all the other material allegations of this petition."

(Syllabus by Harrison, C.)

### ON REHEARING.

8.    **MASTER AND SERVANT—Injury to Minor Employee—Prohibited Work.** Where a manufacturer assigns a boy under sixteen years of age to the work of assisting in the operation of a machine, the principal factors of which are circular saws, such act constitutes a violation of the prohibitions of the child labor laws, and if the boy is injured at such work the manufacturer is liable.

9.    **APPEAL AND ERROR — Remand — Reassessment of Damages.** Where liability is so clearly shown by the evidence of the defendant that the trial court would have been justified in instructing the jury to find the defendant liable, and this court has held, as a matter of law, that defendant is liable under its own evidence, and there is no error in the record save as to the amount of the damages recovered, this court has the power, in the interest of a speedy and economical administration of the law, to fix and establish plaintiff's right to recover and remand the case to the trial court for reassessment of the damages, and for that purpose only.

(Syllabus by Brewer, C.)

*Error from Superior Court, Oklahoma County;*
*A. N. Munden, Judge.*

Action by Walter H. Pigg, by his next friend, against the Curtis & Gartside Company. Judgment for plaintiff, and defendant brings error. Remanded on rehearing.

*Flynn, Chambers, Lowe & Richardson* and *Everest, Smith & Campbell,* for plaintiff in error.

*Giddings & Giddings,* for defendant in error.

Opinion by HARRISON, C. This suit was begun in August, 1909, by Walter H. Pigg, a minor fourteen years of age, suing by and through his father, Joel L. Pigg, for damages sustained from personal injuries caused by the alleged negligence of defendant company. The petition alleged in substance: That defendant, Curtis & Gartside Company, was a manufacturing corporation engaged, among other things, in manufacturing doors and window sashes. That in cutting, shaping, and preparing such window sashes for sale they maintained and operated a system of machinery consisting in part of belts, pulleys, and circular bandsaws. That plaintiff, a minor fourteen years of age, was engaged by his father to defendant to do certain work in and

about.defendant's plant, such work to consist of sweeping out, loading trucks, and occasionally using an ordinary handsaw, and with the understanding that, owing to his youth and inexperience, he should not be directed to operate or oil any of the dangerous machinery, or permitted to work about them so as to endanger his safety. That the contract of employment was verbally entered into between plaintiff's father and one Mattheison, superintendent of the manufacturing plant. That one Johnson was foreman on the floor on which plaintiff was employed to work. That plaintiff was under the direction and subject to the orders of said Johnson. That on the floor on which plaintiff was employed to work there was a system of bandsaws run by electricity and at a very high rate of speed, and used in cutting and shaping the products of said plant. That one Brooks was engaged in operating said system of saws, and that plaintiff was directed by Johnson, the foreman, to assist Brooks and do such things as Brooks directed him to do. That on the date of the injury plaintiff was assisting Brooks in taking the material from the saws in the capacity of off-bearer, and while thus engaged was directed by Brooks to oil the machinery while it was in motion, and while attempting to oil same one of the saws caught his hand and cut it off, thereby permanently injuring and disabling him, and damaging him to the amount of $20,000. That such injuries were the result of defendant's negligence in failing to cover said saws with proper guards, and in directing defendant, a youth under the age of sixteen, to oil said machinery while in motion.

Defendant answered, admitting its corporate existence, and the business in which it was engaged, and the dangerous character of the machinery used in operating same. It admitted the employment of plaintiff to do such things as by law it was permitted to employ him to do, but denied that plaintiff had been employed to assist in operating or oiling said dangerous machinery, or to do anything forbidden by law, and denied that plaintiff had, by any one in authority, been directed to oil said machinery, and that, if plaintiff had been directed to oil said machinery by Brooks, and in obedience to such orders had re-

ceived the injuries complained of, such injuries were the negligent acts of a fellow servant, and not the acts of defendant, and that therefore defendant was not liable for the injuries received.

There were other motions and pleadings filed, but the cause was tried on the theory, on the part of plaintiff, that defendant was negligent in failing to maintain proper covers and guards over the saws, and in permitting and directing the plaintiff, in violation of statutes, to assist in the operation and oiling of the machinery; and defendant maintained that plaintiff's injuries, if received as alleged, were the acts of a fellow servant, and therefore the defendant was not liable.

The cause was tried in June, 1910, resulting in a verdict and judgment for plaintiff in the sum of $10,000. From this judgment, defendant appeals upon ten separate assignments of error, which are presented in the brief under six propositions, to wit: First, overruling motion for judgment on the pleadings; second, refusing to give peremptory instruction in defendant's favor; third, in refusing to give defendant's requested instruction No. 4; fourth, in giving instruction No. 2 requested by plaintiff; fifth, in giving certain instructions on the measure of damages; sixth, error in instructing the jury to return a verdict as soon as nine of their number had agreed.

The company's motion for judgment on the pleadings was filed after a verdict had been returned, and based upon section 5933, Comp. Laws 1909 (Rev. Laws 1910, sec. 5140), citing *Whitaker v. Crowder State Bank,* 26 Okla. 786, 110 Pac. 776; *International H. Co. v. Cameron,* 25 Okla. 256, 105 Pac. 189; also *C., R. I. & P. Ry. Co. v. Woodworth,* 1 Ind. T. 20, 35 S. W. 238. This statute and the decisions cited very clearly support the contention that in certain cases a judgment may be rendered on the pleadings, although a verdict has already been rendered against the moving party. In such cases, however, it must clearly appear upon the face of the pleadings that the movant is entitled to the judgment asked for. As to whether the company in the case at bar was entitled to judgment on the pleadings depends wholly upon whether Pigg had stated a cause of action;

and plaintiff in error bases his right to such judgment on the ground that plaintiff had failed to state a cause of action. A determination of this question virtually decides the case, and depends upon whether the plaintiff was employed in violation of the law, and therefore without the rule in the fellow servant doctrine, or whether his employment was legal and his injuries within the fellow servant doctrine.

All other questions involved pertain to this one decisive issue, which has been exhaustively briefed and argued with ability and commendable fairness by each party from his standpoint. The issue is argued by plaintiff in error under the following propositions, to wit: First, that Johnson and Brooks were fellow servants of the plaintiff, Pigg; second, that the master is not liable for the negligence of a fellow servant, whether such negligence consisted in acts or the giving of orders; third, that plaintiff's being a minor does not alter the rule that the master is not liable for the negligence of a fellow servant—citing a great number of authorities in support of each proposition.

Defendant in error meets these propositions with the contention that the plaintiff, being a minor only fourteen years of age, and having received his injuries in doing work which the child labor law prohibits his being employed to do, the fellow servant doctrine has no application, and that the decisions cited are of no force, for the reason that the fellow servant doctrine does not apply as to minors employed in violation of the child labor law. And this position is met by the company, plaintiff in error, with the contention that the contract was not in violation of the child labor law, but was a lawful contract, which provided that the boy should work at sweeping and loading trucks, occasionally using an ordinary handsaw, and should not work among the dangerous machinery, and that being a contract which the law authorized, the child labor law is not applicable. This analysis presents the relative positions of the parties.

For a solution of this problem, therefore, we must resort to the statutes, to see what may or may not be done, and to the evidence in the record, to ascertain what has been done. Section 630, Comp. Laws 1909 (Rev. Laws 1910, sec. 3729), the

same being S. B. No. 11, Sess. Laws 1909 (Sess. Laws 1909, c. 39, art.. 1), reads as follows:

"No child under the age of sixteen years shall be employed, permitted or suffered to work at any of the following occupations: Oiling or assisting in oiling, operating, wiping or cleaning any dangerous machinery, or adjusting any belt to any such machinery, while in motion; operating, or assisting in operating, circular or bandsaws.  *  *  * "

Now the facts material to this question are as follows: Mr. H. P. Mattheison, who made the contract of employment with the boy's father, testified: That he was foreman of the sash and door department, and that Johnson was his assistant, and had charge of the second floor. He stated that he had no words with the boy at all; he "turned the boy over to his assistant, Mr. Johnson, who had charge of the second floor." As to what his instructions were, he testified:

"Q. What were your general instructions with reference to oiling that machine, and other similar machines, while in motion? A. I gave no instructions; I relied on this Mr. Johnson. Q. Mr. Johnson would give those instructions? A. Yes, sir."

The boy testified:

"Q. Who did you first talk to when you went there? A. Mr. Johnson. Q. What were Mr. Johnson's duties? A. He was foreman. Q. Of what department? A. On the second floor, where that machine was. Q. Did he tell you what kind of work you were to do? A. No particular thing. Q. What did he say you were to do? A. Well, he put me to work the first morning loading the truck.  *  *  * Q. Tell the jury just exactly how you got hurt. A. Well, while I was working at this, he was putting the timber in one end, and I was taking it out at the other; he wanted to cut the piece shorter; while he was fixing the machinery, he told me to oil the machine, and I started to oil it, and while taking this plug out of this slot there (indicating) I cut my hand. Q. Who told you to help Brooks that morning? A. Mr. Johnson told me to do whatever Brooks told me to do. Q. Had you ever undertaken to oil that machine before? A. Yes, sir. Q. Who told you to do it then? A. Mr. Johnson and Mr. Brooks. Q. When you oiled it before that, was the machine in motion? A. Yes, sir. Q. At the time you got hurt, and Mr. Brooks told you to oil the machine, was it in

motion? A. Yes, sir. By the Court: Was Mr. Johnson ever present when you oiled the machine? A. Yes, sir."

Now, applying the above statutes to the above state of facts, it is plainly to be seen that at the time of the injury the boy was engaged in a character of work which the law prohibited— the oiling of bandsaws while in motion. The law very plainly says that persons of his age shall not be employed to do that kind of work. But plaintiff in error contends that he was not employed to do that class of work, that under this contract of employment he was to do only such work as the law authorized, and that it was definitely agreed in the contract that he should not work about nor assist in oiling the machinery while in motion; that his employment, therefore, was lawful, and, being lawful, the rule that employments in violation of the child labor law preclude the application of the fellow servant doctrine does not obtain; that if plaintiff was engaged in doing something in violation of his contract of employment, and while so engaged received the alleged injuries, then in such case the master would not be liable, although plaintiff was acting under orders from Brooks, because Brooks was not a vice principal, but a mere fellow servant.

This theory might be correct if the premises were correct. It might be sustained if the statutes required no more. But the statutes go farther. They very plainly say that no child under the age of sixteen years shall be *employed, permitted,* or *suffered* to do the things which plaintiff was doing when he was hurt. The inhibition is just as strong and positive against permitting or even suffering a child of this age to do such things as it is against employing him to do them. The manifest purpose of the law is to positively prevent children of this age from doing work of this character, and each of the terms, *"employed," "permitted,"* and *"suffered,"* is given a distinct office in the general plan of prohibition. And we have no reason for saying, no right to say, that the Legislature intended to more strongly prohibit the mere employment than it did to prohibit the permitting or suffering a child to engage in this character of work. The moving intent of the Legislature being to positively prevent children

from engaging in hazardous work, the reasonable presumption is that it intended to apply an equally prohibitive force to each of the terms chosen, and that each term should be given its ordinary significance. If the statute went no farther than to prohibit employment, then it could be easily evaded by the claim that the child was not employed to do the work which caused the injury, but that he did it of his own choice and at his own risk; and if it prohibited only the *employment* and *permitting* a child to do such things, then it might still be evaded by the claim that he was not employed to do such work, nor was permission given him to do so. But the statute goes farther, and makes use of a term even stronger than the term *"permitted."* It says that he shall be neither employed, permitted, nor *suffered* to engage in certain works. The relative significance of the words, "permit," "allow," "suffer," is illustrated by Webster under the word "permit," as follows:

"To *permit* is more positive, denoting a decided assent, either directly or by implication. To *allow* is more negative, and imports only acquiescence or abstinence from prevention. To *suffer* is used in cases where our feelings are adverse, but we do not think best to resist. * * * When we say, in social intercourse, *'Allow* me to do this,' the expression is not so strong as *'Permit* me to do this,' which implies a more positive acquiescence. *'Suffer* me to do this' is stronger, and supposes that there may be something unpleasant in the thing proposed."

Under the word "suffer," *Id.,* it means not to forbid or hinder; to tolerate. According to Fallow on Synonyms and Antonyms, to not suffer is to resist, repel, expel, reject, disallow, repudiate, forbid. According to International Library of Reference, vol. 6, it means to forbid, taboo, or hinder. Hence, by giving the language of the statute the ordinary meaning and significance which it bears in common usage, it is clear that additional restraints to that of mere employment are placed upon the employer. It means that he shall not *employ* by contract, nor shall he *permit* by acquiescence, nor *suffer* by a failure to hinder. Thus it is seen, by application of the statutes to the facts in the case, that the master has not fully discharged his duty toward the plaintiff. For, from whatever standpoint it may be viewed,

the fact remains that the boy, acting under directions from Brooks and Johnson, lost his hand while oiling the machinery.

True, it is argued by plaintiff in error "that Johnson, although a foreman on that floor, was not a vice principal; that he was no more than a fellow servant, and conceding for the argument's sake that Johnson did tell the boy to do whatever Brooks directed him to do, and that in obedience to Brooks' order he was oiling the machinery when he received the injuries, that though this be true, yet it could not connect back through Johnson, so as to hold the master liable because the master had a lawful contract; and that, although the injury may have been the result of obedience to Brooks' order, and although such order may have been negligent, yet the master could not be held liable because he had a lawful contract, and such order and obedience to same, being in contravention of a lawful contract, and the negligence coming from a fellow servant, the master could never be held liable." This theory, if sound under the statute, is not tenable here, for the reason that the facts in the case do not constitute an hypothesis for such a theory. Mattheison was the superintendent. This is conceded; at least, it is conceded that he was a foreman with such authority as to bind the master. Now, Mattheison testified that he had no conversation with the boy, gave him no instructions whatever, but turned him over to Johnson, and left the matter of instructions to Johnson. Johnson, then, had authority from one clothed with power to bind the master. The boy testified that Johnson had told him to oil the machine while in motion. He was thus directed by one in authority to do that which the law forbids his being permitted to do.

But plaintiff in error contends that these matters must at all times be construed in the light of the lawful contract, that the boy could have refused to obey. This contention is answered by the fact that there is not one word in the entire record which shows that the boy ever knew what the contract was. There is not a word to show that the boy ever knew his contract to be other than to obey the instructions of Johnson. Mattheison left the matter of instructions wholly to Johnson, John-

son gave them to the boy, and the boy in mute obedience and boyish trust, followed them. Therefore, if Mattheison could delegate the master's authority to Johnson, and thereby bind the master for Johnson's negligence (and Johnson negligently instructed the boy to do that which the law expressly ·prohibited his being permitted to do), then the master is liable for the injuries resulting from such negligence. But, if Mattheison had no such authority, and did not thus bind the master, then the master is liable, on the other hand, for Mattheison's negligence in failing to instruct and admonish the boy, instead of leaving it to Johnson to instruct him, and in permitting and suffering him to do the things which the law.expressly forbids.

But it is not necessary in this case to decide whether or not Mattheison, as vice principal, could delegate authority to Johnson, so as to legally bind the master for Johnson's negligence. The facts are undisputed that Mattheison was the vice principal, that he and the boy's father made the contract, and that he turned the boy over to Johnson without giving him any instructions as to what to do or not do, so far as the record discloses, without even admonishing Johnson as to what instructions to give the boy or what restraint to exercise over him, but left the matter wholly to Johnson, who told the boy to do whatever Brooks wanted him to do, and turned him over to Brooks, who directed him to oil the machine. The law will not permit the master to escape liability through this means. It places a greater responsibility than this upon the master; places additional restraints to that of a mere lawful contract of employment. It positively prohibits the employment of children of this age to do this character of work, and then, in order to shut off the avenues of artifice, just as positively prohibits their being permitted or suffered to do such work. Hence it is our opinion that, under the statutes and the facts in the case, the master is liable in damages for the injuries sustained. The fellow servant doctrine is not applicable to the case. The master's liability arises from a negligent failure to discharge his duty under the statute.

This disposes of the questions raised in the first, second, and third propositions. In the fourth proposition complaint is made of the following instruction:

"You are instructed that under the Constitution and laws of the state of Oklahoma it was unlawful for the defendant to employ the plaintiff in any work that was extrahazardous to his life or limbs. Now, you are instructed that if, at the time he was injured, he was performing work in the defendant's factory, with the knowledge of the defendant, that was extrahazardous to his life or limbs, and he was injured, then in that event plaintiff would be entitled to recover in this action, provided you find that plaintiff has established all the other material allegations of this petition."

Two objections are made to this instruction: First, that it is an incorrect statement of the law; second, that it refers the jury to plaintiff's petition, and leaves it with the jury to determine from the petition what were the material allegations. The first objection might be well taken, as the instruction, standing alone, seems to flatly lay down the rule that plaintiff could recover if injured while engaged in any kind of hazardous work; but, construed in the light of the entire charge, we do not think the jury could have been left in doubt, at least to defendant's prejudice, as to what character of employment the jury was to consider in determining whether defendant was liable.

The second objection might also be sustained, but for the fact that the material issues involved were fairly submitted to the jury in other paragraphs of the court's charge.

The fifth proposition is directed against a certain paragraph of the charge for failing to submit to the jury the proper measure of damage. The clause in the charge complained of is as follows:

"Then, in that event, plaintiff will be entitled to recover his damages herein to the amount which you believe will reasonably compensate him for the injuries sustained; provided you also find that he has established the other material allegations of his petition by a preponderance of the evidence to your satisfaction."

This language is to some extent objectionable, in that it is not altogether clear as to the measure of damage; but inasmuch as the damages to which plaintiff was entitled were purely com-

pensatory, and inasmuch as no complaint is made as to excessive damage, and being unable to see wherein the defendant could have been materially prejudiced from the language of this instruction, we cannot reverse the judgment on this ground.

The sixth proposition is directed against the following instruction:

"Nine of your number may agree upon a verdict. If nine or more, less than the whole number, agree upon a verdict, then it will be the duty of each of you concurring in that verdict to sign the same; if your verdict is a unanimous verdict, then only your foreman need sign it. It will not be your duty, if nine or more, less than the whole number, concur in the verdict, to consume any time in trying to secure a unanimous verdict; but it will be your duty to sign that verdict just as soon as nine of your number, or more, less than the whole, agree upon a verdict to report the same into open court."

The objection urged against this instruction is that it compels the jury to return a verdict just as soon as nine or more concur; that the jury is thereby limited in time for giving the cause due deliberation. This instruction is based upon that part of section 27, Williams' Ann. Const. Okla., which reads as follows:

"In civil cases, and in criminal cases less than felonies, three-fourths of the whole number of jurors concurring shall have power to render a verdict. * * * In case a verdict is rendered by less than the whole number of jurors, the verdict shall be in writing and signed by each juror concurring therein."

The intent of this provision of the Constitution is not to deprive the jury of a reasonable time in which to consider its verdict, nor to give the court power to constitute nine of the number as the jury and the remaining three as an unnecessary surplusage; but its object is to provide that where, after due deliberation has been given to the issues involved, and after a reasonable time has been spent in an endeavor to reach a just verdict, they be unable to concur unanimously, then in order to prevent delay, and mistrials and defeat of justice, three-fourths of their number concurring shall have power to render a verdict. Note the language of the Constitution: "Three-fourths of the whole number concurring *shall have power* to render a verdict."

This language clearly implies that the power is with the jury to say whether they will render a three-fourths verdict, and not with the court to peremptorily demand it.

Therefore the foregoing instruction, while it may not constitute reversible error in the case at bar, is by no means free from criticism. Its obvious tendency is to invade the province of the jury, a province so sacred in law that to invade it to any extent is to that extent an interference with the balancing of the scales; and courts should, with refined appreciation of their own exalted position and grave responsibilities, ever refrain from obtrusively tilting the beam of those scales after they have been given into the hands of the jury, and, but for the fact that the record herein shows the defendant so clearly liable, we should reverse the judgment. But as the liability is so conclusively shown, even by the testimony submitted for the defendant, for this and other reasons herein given, we do not feel justified in remanding the case for another trial.

The judgment should be affirmed.

By the Court: It is so ordered.

---

## On Rehearing.

Opinion by BREWER, C. The exceptional force and cogency of the argument on rehearing has compelled our most careful consideration of this record. This examination has involved a study of the evidence in the case, and this study convinces us that, under and considering only the evidence of defendant, liability is shown, and that on the question of liability the jury should have been instructed to find for the plaintiff. And that the only question to present to the jury was the amount of the damages to which the plaintiff was entitled.

On the question of liability, in addition to what is said in the original opinion, we call attention to the fact that the statute (Comp. Laws 1909, sec. 630, Rev. Laws 1910, sec. 3729) regulating the employment of children provides:

"Section 630. No child under the age of sixteen years shall be employed, permitted or suffered to work at any of the following occupations: Oiling or assisting in oiling, operating, wiping or cleaning any dangerous machinery, or adjusting any belt to any such machinery, while in motion; operating, or assisting in operating, circular or bandsaws," etc.

Mark the words of one paragraph of the prohibition, *"No child * * * shall be employed, permitted, or suffered to work at * * * operating, or assisting in operating, circular or bandsaws."* (Italics ours.) From the brief for rehearing we find from defendant's own evidence that Mattheison, the foreman, employed the boy under an arrangement with the father, and turned him over, without a word of instruction, caution, or warning of danger, to one Johnson, assistant foreman, in the sash and door department. Part of Johnson's duties as assistant foreman was to instruct the men where to work and direct their work. Mr. Mattheison, being asked what work he intended the boy should do, answered, "taking the material away from the machines." The machine was one used for manufacturing window and door sash; it was about 42 inches high and four and one-half or five feet long. It was equipped with a number of circular saws. The light timbers were fed to the machine at one end, and came from the saws onto a revolving or endless chain, which carried the timbers to the other end of the machine, where, if not caught, they would fall to the floor. The work the boy was put to doing, and was doing immediately preceding the injury, was to catch these timbers after they left the saws, as they traveled on the revolving chain, and pile them on trucks.

The evidence contains the following:

"Q. It was the boy's duty to stand right behind that thing, and while they were cutting there the boy takes that stuff off of the machine? A. Yes, sir. Q. How close would he stand to that saw? A. He would stand about two feet. Q. This boy, then, had to stand about two feet from that saw? A. Yes, sir. Q. Did you have any guard around that? A. No, sir. Q. Who run this machine? A. A man by the name of Brooks. Q. Is this what they call an endless chain? A. A double intending machine. Q. Who was the other man that it took to run it, besides Brooks? A. There was only one operator to the machine and one boy.

Of course, there were other men around the mill that operated other machines. Q. Now you understand my question, Mr. Mattheison, answer my question. Who, at the time this boy was hurt, was the other man at the machine? A. Walter Pigg."

And further:

"Q. Now, when the boy took the stuff, as you call it 'taking from the machine,' he had to take it with his hands and put it on the truck? A. Yes, sir. Q. It isn't a fact, then, that it was supposed to fall on the floor? A. No, sir. He has plenty of time to take it right off of the machine without letting it fall on the floor. He has plenty of time to take that stuff from the machine without letting it drop. Q. In taking off from the machine, it is customary to take the pieces before they drop on the floor? A. Yes, sir. Q. But if not taken, they will drop on the floor? A. Yes, sir. Q: That is, the endless chain takes the pieces out and drops them on the floor unless somebody takes them before they drop? A. Yes, sir. Q. That is why you have to have an assistant, to keep it from falling on the floor? A. We would have to have somebody."

Relative to who assigned the boy to work at the machine, the assistant foreman, Johnson, says:

"Yes, sir; I put him there myself, took him over there and showed him how to do it."

Johnson was asked the following question:

"Q. Then you took him to help Brooks in operating that machine and taking the lumber or sash from it? A. Yes, sir; I did."

What does this testimony disclose? Simply this: That this boy was hired and assigned to assist in the operation of a machine, the principal factors of which were circular saws, in clear violation of the spirit, and we believe the letter, of the prohibition of the statutes relating to child labor. It is no answer to say that his injury was not caused by handling the timbers in front of the saws, but by reaching over and attempting to oil the saws. If he had not been there working at this machine, it certainly is not probable that he would have tried to oil the saws. The law tries to guard the child from the dangers arising out of the inexperience and the immaturity of the child mind. This law is based on the knowledge of men that children of fourteen are immature in judgment, incautious, curious, and inquisi-

tive as to the mechanism and operation of things, and that if placed to work with or at dangerous and complicated machinery, out of these very traits of childhood, they are likely to do just what this boy did, undertake to do something he thought to be in the line of his duty, and get hurt. The wisdom of this law must be clear to all men who have, or are interested in, children. It needs no defense by us. The court has no duty in regard to it, except to insist and, where need be, to decide that it must be observed by all who employ labor, both in its letter and spirit.

When defendant made this proof, it stood before the court condemned out of the mouths of its own witnesses; its position was one of admitted default in regard to its duty to this child. Had it not violated its duty in putting him to work at, around, and over—assisting in the operation of this dangerous piece of machinery—within the realm of all reasonable probability, he would not have been hurt and bodily maimed. We are not inclined to indulge in any nice refinements as to proximate cause, and do not need to rest this decision on whether or not the plaintiff was told to oil the saws, a point upon which it is claimed the conflict in the evidence took the question of liability to the jury.

It is believed and, therefore, held that, under the evidence most favorable to the defendant, it was not only permitting and suffering the plaintiff to do work contrary to the prohibition of the statute, but that it was actively requiring him to so work, and that its failure of duty in this regard is responsible for the injury. We may add that we think this point is sufficiently in issue in the pleadings.

The question, then, of the amount of damages being the only question that should have been submitted to the jury, none of the instructions of the court on the point of liability come under review here; but the instruction on the measure of damages and the method to be pursued by the jury in returning a three-fourths verdict necessarily in this situation assume a peculiar importance. In the original opinion it is said that the instruction on the measure of damages is to some extent objectionable because not clear as to the measure to be applied. The instruction not "to consume

any time in trying to secure a unanimous verdict, but it will be your duty to sign that verdict just as soon as nine of your number, or more, less than the whole, agree," etc., was held to be clearly erroneous. The vice of this instruction is so clear to all men, though they be but slightly acquainted with the practical working of the jury system, that it needs nothing added to what is said in the original opinion.

The view formerly taken in this case was that although one of these instructions was open to criticism and the other wholly bad, yet, that inasmuch as it was not urged that the damages were excessive as a ground for reversal, that the errors were harmless. Ought this view to be retained? This is the only question that has given us much trouble. The injury in this case was grievous and resulted in the loss of the right hand. The damages awarded were $10,000. The boy was entitled to recover such an amount of damages as would fairly compensate him for the injury sustained, as shown by the evidence in the case. And in arriving at this amount the jury should have taken into consideration all the proper elements of the damage. In *Muskogee Electric Traction Co. v. Reed,* 35 Okla. 334, 130 Pac. 157, the rule is thus stated in syllabus:

"In an action to recover damages for the injury to the person, the plaintiff is entitled to recover the expenses of the cure, or reasonably attempted cure, the reasonably probable cost of the future treatment or nursing, when the injury is permanent or irremediable, and the loss of time up to the verdict, and reasonably probable future loss from incapacity to do as profitable labor as before, and pain and suffering proximately caused by the injury." (*Choctaw, Okla. & G. Ry. Co. v. Burgess,* 21 Okla. 653, 97 Pac. 271.)

Also, see *Chas. T. Derr Const. Co. v. Gelruth,* 29 Okla. 538, 120 Pac. 253.

The amount to be allowed must finally rest in the sound judgment of the jury, applied to the evidence before it on the question measured by the law as given by the court. The jury is an important branch of the court. It is an integral and necessary part of our system. On questions of fact cognizable by it, its judgment, expressed in a verdict, will not be disturbed,

when there is evidence reasonably tending to support it, even though the court, upon the same evidence would have, had it been left to it, arrived at a different result. Hence the importance to—nay, the fundamental right of—every suitor in a jury case to have the mature, unprejudiced, unbiased, and deliberate judgment of the jury on the facts of his case. Each juror brings into the box his peculiar experience, observation, and intelligence. He has a right to present to the other members, courteously but courageously, the views he entertains of the evidence; what it proves to his mind, and from it all wherein justice and right lies. Has not every lawyer of experience had cases where the unanswerable logic and analysis of some broad-visioned man, ripe in experience and observation, has stood alone at the beginning of the deliberation, and later, and quickly, changed the views of the majority into a concurrence with his own. The prime function of the jury—to deliberate—is destroyed before they retire, when instructed to hasten along, to waste no time in trying to arrive at a unanimous verdict, but that as soon as nine can agree on something to bring it in. The Constitution has not reduced the jury to nine men. Twelve men are still to deliberate. If after reasonable deliberation and consideration a unanimous verdict cannot be arrived at, nine of the jurors have the power, if they desire to use it, to return a three-fourths verdict into court. This course is only to be pursued after the case has had reasonable consideration with a reasonable opportunity for discussion and reasoning upon the part of jurors. The errors herein discussed were fully appreciated by us in the original opinion; but it was thought that, as it was not alleged as a ground of reversal that the damages were excessive, we were justified in holding the errors harmless. But it has been called to our attention that, while this is true, yet that complaint has been made all through the case as to the damages. Not that the amount would be held so excessive of itself as to afford ground for reversal, but that the amount should not stand, because not based on the proper measure, and not arrived at in a proper way. We have come to the conclusion that the errors cannot and ought not to be held harmless.

In this situation where, after a lengthy and manifestly expensive trial, a jury has found defendant liable, and this court has concluded that, applying the law to defendant's own evidence taken in its most favorable light, after a full and complete development of the facts of the injury sued for and the situation of the parties, the defendant is liable, as a matter of law, and that the only error goes to the amount of the damages—in such situation the judgment of the trial court holding the defendant liable should be affirmed, and the plaintiff's right to recover stand and remain established; and that the amount of judgment be set aside, and the cause remanded, and a new trial be had upon the question of the amount of the damages recoverable, and that only. This court has the power to so direct, in the interest of the speedy and economical administration of justice, under the peculiar situation presented here, and the holding to that effect is confined to the facts of this case. There is ample authority to support this holding. *Powell v. Augusta. & Summerville R. Co.,* 77 Ga. 192, 3 S. E. 757, a case closely in point. In *Davenport v. Bradley,* 4 Conn. 309, it is said:

"When there exists an error in the assessment of damages only, it is entirely incompatible with justice, that the previous proceedings in the cause should be set aside. So far as they are legal, they must be permitted to remain. It follows, that the effect of the reversal must be limited to the assessment of damages, and not be suffered by retrospection to vacate any part of the anterior proceedings, in respect of which there has been, and can be, no complaint."

*Patterson v. Blakeney,* 33 Ala. 338; *Boyd v. Gilchrist,* 15 Ala. 849; *McConnell v. Wall,* 67 Tex. 352, 5 S. W. 681; *McKinney et al. v. State ex rel. Nixon,* 117 Ind. 26, 19 N. E. 613; 3 Cyc. 457.

The cause should, therefore, be remanded, and a jury impaneled to determine and reassess the amount of the damages due plaintiff, as shown by the evidence, and judgment shall be rendered for the amount so found, in accordance with this opinion. Under the circumstances, we will not award costs, on account of the remand.

By the Court: It is so ordered.