**MAGNOLIA PETROLEUM COMPANY, A Corporation, and Jack Long, Plaintiffs in Error,**

**v.**

**LaNoah ANGELLY, a minor, by and through Emma Angelly, his Legal Guardian, Mother and Next Friend, Defendant in Error.**

No. 35952.

Supreme Court of Oklahoma.

Dec. 13, 1955.

As Amended Dec. 14, 1956.

Rehearing Denied and Dissenting Opinion Filed Dec. 26, 1956.

Application for Leave to File Second Petition for Rehearing Denied Feb. 5, 1957.

Earl A. Brown, Chas. B. Wallace, Dallas, Tex., James E. Horigan, Oklahoma City, for plaintiff in error, Magnolia Petroleum Co.

Edwin W. Dudley, Antlers, for plaintiff in error, Jack Long.

Marx Childers, Oklahoma City, Lee Welch, Antlers, for defendants in error.

JOHNSON, Chief Justice.

This action was brought by LaNoah Angelly, a minor, by and through Emma Angelly, his legal guardian, mother and next friend, against John L. Bates, Jack Long and Magnolia Petroleum Company to recover damages for alleged wrongful personal injuries to the plaintiff. No service was had upon Bates, but the case proceeded to jury trial against Jack Long and Magnolia Petroleum Company resulting in a verdict in favor of plaintiff against both Long and Magnolia jointly, which verdict was approved by the trial court and judgment rendered accordingly. From an order overruling separate motions for a new trial, both defendants appeal.

It is first contended by defendants that there was no primary negligence shown, and for that reason, among others, (hereinafter referred to) the judgment must be reversed.

While this assignment challenges the record as to evidence, yet to a large extent the factual situation is not in dispute.

In 1945 the plaintiff when 13 years old was employed by defendant Long, and was under 16 years of age and so employed by Long on December 1, 1947, the date of his injury. In this connection, however, Long claims that the boy (plaintiff) was employed by Bates, his assignee of the airport, when injured, which claim was negatived by the jury's finding to the contrary from conflicting evidence on that issue, and this concluded fact issue now inheres in the judgment.

Briefly stated, other facts germane to the issues involved are that Jack Long operated a small airport near Antlers, Oklahoma. He had no one generally in charge of this place other than the plaintiff to care for the same during his absence. Plaintiff lived and attended school near the airport and had an arrangement by which he could leave school when a plane came in to land. It also appears that it was his duty to be at the airport before and after school and to keep the hogs and other animals off the field. There is evidence to the effect that plaintiff serviced planes and performed much of the other usual work around a place of this nature.

The Magnolia Petroleum Company, through its distributor, Ed Jackson, installed and furnished to Long a tank, pump and other equipment to be used in supplying gasoline to planes at the field; this being the usual arrangement where a retailer agrees to exclusive use of a company's gasoline and other products. The arrangement between Magnolia and Long was substantially the same as between the parties in Palacine Oil Co. v. Philpot, 144 Okl. 123, 289 P. 281.

█ Long, the operator of the airport and filling station, owed the duty to furnish his employees reasonably safe tools and appliances and place to work. This is admitted. The Magnolia Company, through its distributor, because of defectiveness in the first tank and pump, installed another tank and pump; the hose on the newly installed pump was short and was elongated in a manner described by the testimony, which manner is said to have been improper, or not according to customary demand. The connection resulting in elongation of the pump hose is said to have leaked. The employee, plaintiff, testified that he had complained of leakage where this elongation was made. The evidence showed that when said employee, standing some distance away from the pump and the hose attached thereto and hanging in position, lighted a match, an explosion occurred, inflicting on plaintiff severe burns over his body and limbs which endangered his life for a time, and after many months of hospital treatment, with numerous skin graft operations, resulted in serious and substantial permanent injury, disability and disfigurement.

█ The theory of the plaintiff is that the leakage resulted in formation of a

pocket of gas fumes, and the explosion under the circumstances was the result of the defendants' negligence in failing to perform their assumed duties to furnish proper and safe appliances. He argues that the evidence is sufficient to show greater probability that the explosion occurred for this reason than any other. If so, the rule would be complied with and the situation created was one upon which reasonable minds could differ as to the cause of plaintiff's injury. Oklahoma Natural Gas Co. v. Jopling, 121 Okl. 10, 247 P. 69.

The record confirms plaintiff's theory, and we conclude that the position of Long and Magnolia that there is no evidence to show the cause of the explosion is not well taken.

■ The verdict of the jury and the judgment based thereon in a law action will not be disturbed where the evidence is such that reasonable minds might differ on the question of what caused an explosion and resulting personal injuries.

We are unable to see from the evidence that Jackson, the agent and distributor for Magnolia, made an inspection of this equipment, either before or after substituting a pump and hose for the defective one. He tested the pump to see if it would draw gasoline; and spliced the hose by connecting the old with the new. There is no indication that he did more. He did not use the customary means to make the connection reasonably safe, yet he was dealing with a most elusive and dangerous substance. From the evidence, there appears to be no reason to assume that brass fittings would seal more tightly than the usual metals used in such business. The customary means used to make such a connection reasonably safe is described in the case of Palacine Oil Co. v. Philpot, supra, as follows [144 Okl. 123, 289 P. 287]:

"Testimony was given by defendant's witnesses, those who installed the tank and pump in the first instance and who installed the new pump, to the effect that all connections in the pipe were properly made in the usual manner and sealed and painted over with a mixture of litharge and glycerine, the substance usually used for such purpose, and tested for leaks before being covered and found to be free from any leaks."

The only material difference in the Palacine case and the instant case, except the manner of sealing the connection, is that in that case the gas had evidently seeped through the ground into an abandoned well and was unfortunately ignited and caused the injury. Here plaintiff claims the gas leaked into the air and was ignited when he struck a match to light a cigaret.

■ In addition to proper installation of equipment, it was the duty of the company in furnishing equipment to make frequent and timely inspection of the same to discover and repair any leaks or defects therein. There is no evidence that such inspection was ever made.

There seems to be no dispute that plaintiff was injured by the explosion of gasoline fumes in the area where he was standing when he lighted the match, igniting and causing a fire. From the evidence it is plain that the gasoline which caused the injury was from the company's equipment. There was no other known or apparent source from which it could have come. The only question is whether this gasoline came from leaks or defects in the company's equipment or by plaintiff spilling it on himself while servicing a plane or in furnishing a stranded motorist with a small amount of gas to run his car to a gas station, a circumstance which happened shortly before the explosion occurred. Plaintiff's evidence is to the effect his clothing had been recently laundered, and that he did not spill any gasoline on his clothing or otherwise; but that the fire was caused by gas and gas fumes that came from the pump, tank or hose of the company's equipment. It is argued by counsel for plaintiff that gas is heavier than air, and when it escapes it will drift with the wind and most

often break up into pockets, like clouds or smoke, and when thus unconfined, will ignite and burn without flashing back to the point of escape.

■ The jury was justified in finding that it was more probable that gas had leaked from defects in the company's equipment and caused the injury to plaintiff than from any other cause.

We have frequently stated the applicable rule to be:

"If there is any evidence which reasonably tends to prove directly or indirectly or by permissive inference the essential facts, the verdict of jury must stand.

"In a civil case, in order to establish his claim, plaintiff need only make it appear to be more probable that injury came in whole or in part from defendant's negligence than from any other cause, and such fact may be established by circumstantial evidence and reasonable inferences to be drawn therefrom." Mid-Continent Pipe Line Co. v. Price, 203 Okl. 626, 225 P.2d 176, 177, and cases cited therein.

For recent cases applying this general rule, see Otis Elevator Co. v. Mellot, Okl., 281 P.2d 408 and Service Pipe Line Co. v. Donahue, Okl., 283 P.2d 844.

■ The Magnolia next insists that the furnishing and use of the equipment by Long was a bailment, and there being no contractual relation between plaintiff and it, there can be no recovery. We think the situation presented here is governed by the rule applicable to one furnishing appliances for the use of others. In 45 C.J. Negligence, Sec. 270–5, page 849, the rule is stated to be:

"One undertaking to furnish machinery or appliances for the use of others assumes a duty to furnish proper and safe appliances, and he may be liable to one lawfully using such machinery or appliances who is injured because of his failure to exercise proper diligence in this regard, even where

the person using the appliance, or his employer, does not receive the appliance directly from the person furnishing it, the liability resting not upon a contractual relation between the person injured, and the person whose negligence caused the injury, but upon the failure to perform a duty assumed by one, which results in injury to another. This rule is particularly applicable where the defect is such as to render the article in itself imminently dangerous and serious injury to any person using it as a natural and probable consequence of its use." See also 65 C.J.S., Negligence, § 70, Furnishing Appliances for the Use of Others.

■ There is no merit in this assignment of error, which is equally true of the company's claim that one Ed Jackson, its distributor, was not its agent with power to bind Magnolia with his knowledge, but was an independent operator. Agency is generally a question of fact to be determined by the court or jury as the case may be. From the evidence and the circumstances shown in the record, the jury was fully justified in finding that Jackson was the duly authorized agent of Magnolia to install, inspect and repair the equipment it provided for Long's use at his airport, in consideration that Long use exclusively its products.

■ The jury had a right to disregard the evidence of defendants and to believe that of plaintiff. It could take into consideration all of the reasonable evidence and circumstances and reasonable inferences to be drawn therefrom. Under the rule, 45 C.J. Sec. 270; 65 C.J.S. § 70, supra, and the facts and circumstances in this record, we cannot say that there is not sufficient evidence to sustain the verdict in this respect.

■ The next material contention of Magnolia is that the court committed reversible error in giving Instructions 19 and 31. Briefly summarized, these instructions informed the jury that it was a violation of our statute, 40 O.S.1951 §§ 71 and 72,

for any child to be employed or permitted around or to handle aviation gasoline or any other explosive, and that the doing of same within itself was evidence of negligence. The instructions informed the jury that such employment or permitting such employment within itself did not make out a case in favor of plaintiff, but in effect that it was evidence which the jury might consider in determining the liability, if any.

Section 72, supra, of the Child Labor Law is the statute applicable herein. This section prohibits the employment (or permitting the employment) of minors over 14 and under 16 years of age in certain defined businesses and factories, including the storing of explosives. The storing of aviation gasoline· is the storing of explosives within the terms of the statute, a violation of which in case of injury to such minor by reason of and through the prohibited employment, constitutes negligence per se. Tulsa Cotton Oil Co. v. Ratley, 59 Okl. 45, 157 P. 1056; Curtis and Gartside Co. v. Pigg, 39 Okl. 31, 134 P. 1125; and where, as herein, pleadings and proof showed a violation of Child Labor Law, instructions advising the jury that such violation is negligence per se was proper. Id. The instructions were materially more favorable to defendants than they were entitled to have under the statute.

■ Magnolia claims also that no relationship of master and servant existed between it and the plaintiff, and that the language used in the instructions implicates that such relationship did exist between it and plaintiff, as well as between plaintiff and the co-defendant, Long, and that it is apparent that such was the result intended to be accomplished; that there was not a scintilla of pleading, evidence or legal authority to justify the objectionable instructions without, at least, excluding Magnolia from the implication that it, too, could be found by the jury to have been negligent in violating the Child Labor Laws by the employment or permitting the employment of minors under the age of 16 years around certain hazardous occupations.

We observe that Magnolia did not ask for any other instruction on this point, nor ask the court to instruct the jury that there was no evidence of any employment or of permitting plaintiff to work around such gasoline by Magnolia, and that they should not consider these instructions as against Magnolia. They thereby waived the point.

■ Magnolia's liability, if any, to plaintiff, was not dependent upon plaintiff's age and the Child Labor Laws unless it negligently permitted plaintiff's employment, Sec. 72, supra. But even if Magnolia's contention is correct that it did not employ or permit the employment of plaintiff, yet the error, if any, is not prejudicial to Magnolia as Magnolia was fully protected by the court's giving to the jury different forms of verdict, permitting the jury to return a verdict in favor of both defendants, or in favor of the plaintiff against Long only, or in favor of plaintiff against Magnolia only, or in favor of plaintiff against both defendants. The jury chose in conformity with the pleadings, the evidence, and Magnolia's liability for furnishing defective appliances, to return a verdict in favor of plaintiff and against both defendants. This alleged error, if any, by the trial court apparently did not mislead the jury nor cause any miscarriage of justice. If there was error, it was harmless.

■ The contention of Long that plaintiff was not, at the time he received his injuries, an employee of his so as to invoke the operation of the Child Labor statute, is untenable. As heretofore shown, there was ample evidence, though conflicting, to support the verdict of the jury that Long was the employer of plaintiff when he was injured and as was alleged; and that the relationship of master and servant did exist between plaintiff and Long. This fact is so evident from a reading of the record that we deem it unnecessary to narrate the evidence relating to such relationship.

We next consider the contention that the verdict was excessive as the result of passion and prejudice of the jury, and that

the damages were not supported by the evidence.

■ We have already disposed of the question of the sufficiency of the evidence to sustain the verdict of the jury and judgment based thereon, but whether a verdict is excessive depends upon the particular facts and circumstances in the case. Jones v. Eppler, Okl., 266 P.2d 451. Herein, the amount of the verdict and judgment conformed to the pleadings and evidence. A careful examination of the entire record fails to reveal facts sufficient for us to conclude that the amount awarded clearly shows that the jury was actuated by passion, partiality or prejudice. In an action for damages for personal injuries sustained, the court will not set a judgment aside because of excessive damages, unless the amount awarded clearly shows that the jury was actuated by passion, partiality or prejudice. Jones v. Eppler, supra.

■ Defendants complain of alleged error in permitting plaintiff to remove all of his clothing in the view of the jury to display and demonstrate to them the full area of his burns. Arguing that since plaintiff had already fully testified as to the burned area on his body, his pain and disability, which facts defense counsel had offered to stipulate, and that for that reason such display and demonstration was unnecessary and prejudicial and only served the purpose of arousing sympathy and passion against the defendants and thus interfered with their right to a fair trial.

No authority is cited to sustain this contention, and through our independent research none was been found. However, we can see no logical legal reason why this procedure was improper or prejudicial to defendants.

■ Magnolia also complains of error in refusing to give certain instructions, and in giving certain others hereinbefore discussed. But from a careful examination of the record, including the instructions given and refused, we find no substantial prejudicial error because when the instructions as given are considered as a whole, they show that the material issues were fairly covered and properly presented to the jury.

Other questions are raised by the parties herein, but we do not deem it necessary for the purposes of this opinion, nor in the interest of justice, to consider them.

Judgment affirmed.

CORN, DAVISON, HUNT and STEGER, JJ., concur.

WILLIAMS, V. C. J., and HALLEY, BLACKBIRD and JACKSON, JJ., dissent.

WELCH, J., having certified his disqualification in this case, Honorable W. L. STEGER, Durant, Oklahoma, was appointed Special Justice in his stead.

WILLIAMS, Vice Chief Justice (dissenting).

Since I am of the opinion that the majority opinion herein is completely erroneous, I feel compelled to express my view of the case.

In the first place, defendants' contention that there was no primary negligence shown appears to me to be well taken.

Plaintiff's petition alleged in substance that on and prior to December 1, 1947, he was employed by defendants Bates and Long in and around their business of operating an airport south of Antlers, Oklahoma, and was permitted to and did assist in the fueling of planes; that defendant Magnolia Petroleum Co. owned and leased to the other defendants a gasoline tank and pump with hose which was maintained in such airport for the purpose of storing gasoline and refueling airplanes; that such gasoline tank or the pump or hose line thereof, or some part of same unknown to plaintiff, was in a manner unknown to plaintiff in a defective or dangerous condition, so that either while in use or while a person was near the same the said gaso-

line tank, hose line or connections or some part thereof would leak or spray liquid gas or vaporized gas out of same and upon any person or object near or using same, all in some manner unknown and not ascertainable by plaintiff; that on December 1, 1947, plaintiff had been near such gasoline tank and pump and had operated the same and unknown to him a quantity of gasoline or vapor had collected on his clothing and shortly thereafter when he struck a match his clothing caught fire resulting in the injuries alleged; that defendant Magnolia Petroleum Co. is liable to plaintiff because of its negligence in owning, leasing and operating such defective gasoline tank, pump, hose line and connections; that defendants Bates and Long are liable to plaintiff because they were negligent in owning and operating such defective gasoline tank, pump, hose line and connections and further because they employed or permitted plaintiff, a minor under the age of 16 years, to work in the handling and storing of airplane gasoline.

Plaintiff's evidence consisted chiefly of his own testimony. Plaintiff, who was 15 years old at the time of his injury, testified that he had been employed by defendant Long to work in and around the small airport operated by Long and that he, plaintiff, was permitted to refuel airplanes but had been instructed not to provide fuel for automobiles. Plaintiff admitted that at the time of his injury there was no explosion or flame around the gasoline dispensing equipment and testified that his clothing caught fire while about 15 or 20 feet away from the gas pump while in the process of striking a match with his thumb nail to light a cigarette approximately five or ten minutes after he had, in violation of his instructions, sold one-half gallon of gasoline in a small open-topped naptha can to two stranded motorists, and that the fire was confined to his person.

Plaintiff testified he did not get gasoline on himself while getting the can of gasoline for the motorists. He also testified that just prior to selling the gasoline to the motorists, he had refueled an airplane belonging to Bates. He then testified that he did not have any gasoline on him when he struck the match and three different times testified he positively did not get any gasoline on himself when he refueled the airplane; then later testified that gasoline from some source got on him; that it might have gotten on him from fueling the airplane. When asked why he said he might have gotten gasoline on himself when refueling the plane and did not get any on himself from the can of gasoline he sold to the motorist, he answered: "I could have, I don't remember that." He also testified that he could have gotten gas on himself from the hose, but on cross-examination testified that while part of the hose was old, it did not leak and that the hose itself did not make any difference as far as the gas was concerned.

No evidence was offered by plaintiff to show that gasoline or vapor sprayed or leaked from the tank, pump or hose, or that the equipment was in any manner defective. On the contrary, the uncontradicted and unimpeached evidence was that the gasoline dispensing equipment was at all times in good condition, free from defects, and did not leak. Under such circumstances there is no evidence upon which to base a judgment for plaintiff here. Even assuming that the relationship of master and servant existed between defendant Long and plaintiff, as alleged in plaintiff's petition (although the undisputed evidence is directly to the contrary), still Long would not be liable without some proof of negligence on his part. Negligence on the part of the master is essential to his liability. Abdo v. Mullen, 173 Okl. 144, 44 P.2d 102; 56 C.J.S., Master and Servant, § 171.

In this regard the majority opinion refers to an alleged defectiveness of the tank and pump and the installation of another tank and pump. The only evidence on the point is that at one time the pump was replaced because the old pump would not pump the gasoline out of the tank. There was no evidence that the tank ever leaked or was otherwise defective or was ever replaced or that the pump or hose ever leaked either

before or after the replacement of the pump. I want to emphasize, however, that the only failure of equipment shown to have occurred and the only reason for replacing the pump was a failure of the old pump *to pull any gasoline out of the tank* and not any leakage or allowance of gasoline to escape.

The following statement in the majority opinion:

"the hose on the newly installed pump was short and was elongated in a manner described by the testimony, which manner is said to have been improper, or not according to customary demand. The connection resulting in elongation of the pump hose is said to have leaked. The employee, plaintiff, testified that he had complained of leakage where this elongation was made,"

is simply not supported by the record in this case at all. Such opinion does not state *who* said the hose was elongated in an improper manner or not according to customary demand or that the connection leaked, but certainly no witness who testified in the case so stated. Nor did plaintiff, himself, testify that he had complained of leakage at the connection in the hose. On the contrary, he testified that the hose, although old, did not leak.

As to defendant Magnolia Petroleum Co., the evidence reveals that its only connection with the case was that it owned and had leased gasoline dispensing equipment to defendant Long, for use at the airport, approximately two years prior to the date of plaintiff's injury. Such equipment was loaned under an agreement that defendant Long would purchase Magnolia's gasoline in exchange for the use, possession and control of said equipment and that he would maintain the same at his own cost in good condition and repair, and hold Magnolia harmless in connection with the location and use of said equipment. This agreement and the furnishing of the equipment thereunder are unquestioned. Furthermore, since there was no evidence of any defect of any kind in the equipment so furnished,

Magnolia could not be held liable in any event.

Although the majority opinion does not reveal it, plaintiff's chief contention is that negligence may be inferred under the doctrine "res ipsa loquitur" in the absence of any explanation, thereby in effect admitting a lack of proof of negligence. I fail to see how such doctrine could have any application to the case at bar. The term "res ipsa loquitur" literally means "the thing speaks for itself." It is the term applied to the well established doctrine that where the thing which caused the injury complained of is shown to have been under the management or control of defendant or his servants and the accident was such as in the ordinary course of things would not have happened if those who had its management or control had used proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the accident arose from want of care. Such doctrine, however, cannot be invoked until plaintiff has established, as preliminary propositions, what thing caused the injury and that the thing causing the injury was under the control of the defendants. Ayers v. Amatucci, 206 Okl. 366, 243 P.2d 716; Champlin Refining Co. v. George, 182 Okl. 118, 76 P.2d 895. It does not apply where the facts shown are equally consistent with the hypothesis that the injury sued for was caused by the negligence of *either* party *or* of *both* combined and the act complained of must be shown to have been such as is without explanation except on the theory of negligence in the light of ordinary experience, and the thing causing the accident must have been under the control of defendants at the time of the accident. Ayers v. Amatucci, supra; Cosdon v. Wright, 202 Okl. 211, 211 P.2d 523; Terrell v. First Nat. Bank & Trust Co., 204 Okl. 24, 226 P.2d 431. Since it is manifest from the evidence in this case that the circumstances are not of such character as to give rise to reasonable inferences that if due care had been employed by defendants the accident would not have happened,

negligence may not be inferred under the doctrine of res ipsa loquitur.

It might also be observed that under the undisputed evidence neither of the defendants here involved was in possession and control of the premises at the time of the accident.

Plaintiff's further contention that his employment was in violation of the child labor laws, rendering defendants guilty of negligence as a matter of law, is in my opinion likewise untenable. In the first place, plaintiff was, at the time of his injury, in the employment of John L. Bates and under the uncontradicted evidence was not in the employment of either defendant Magnolia Petroleum Co. or defendant Long. In the second place, plaintiff's employment was not in violation of such laws. The proof shows that plaintiff was over 15 years of age and just under 16 years of age at the time of his injury. There are two sections of the statute affecting the employment of minors, 40 O.S.1951 §§ 71 and 72. Section 71 pertains only to minors under the age of 14 years and is therefore not applicable to plaintiff. Section 72 prohibits the employment of minors under the age of 16 years in certain specified occupations. Plaintiff's employment was not one of those specifically forbidden by such section and therefore was not in violation thereof. 56 C.J.S., Master and Servant, §§ 14 and 419; Huffman v. Oklahoma Coca-Cola Bottling Company, Okl., 281 P.2d 436.

Defendants also contend that the court erred in overruling their motion for new trial on the grounds of newly discovered evidence. This contention appears to me to be well taken, but the majority opinion does not even notice it, much less dispose of it.

I am of the opinion that the plaintiff in this case has wholly failed to establish primary negligence on the part of either defendant here involved and that the judgment should be reversed and the cause remanded, with instructions to enter judgment for defendants. I therefore respectfully dissent.