## TERRELL v. FIRST NAT. BANK & TRUST CO.

No. 33856.   Dec. 26, 1950.

*226 P. 2d 431.*

W. S. Myers, Tulsa, for plaintiff in error.

Hudson, Hudson & Wheaton, Tulsa, for defendant in error.

GIBSON, J. Plaintiff in error, hereinafter referred to as plaintiff, brings this appeal from a judgment of the district court of Tulsa county denying her relief in an action to recover damages for injuries to her person alleged to have been occasioned by the collapse of the wings of a revolving door on premises of defendant in error hereinafter referred to as defendant, while she was passing through the same.

Upon the close of the evidence the court directed a verdict for defendant and rendered judgment thereon.

As grounds of error it is contended that the court erred (1) in excluding competent evidence offered by plaintiff; (2) in admitting incompetent evidence over plaintiff's objection, and (3) in directing the verdict for defendant.

There is alleged in plaintiff's petition that on May 26, 1945, she, then holder as payee of check drawn on the defendant bank, went to defendant bank to have the check cashed and that while leaving the bank received the injury complained of. In describing the occurrence it is said:

". . . that while going through said door to reach Main Street, one of the metal bars holding said revolving doors in place came loose and dropped to the floor and that said door struck this plaintiff in the back with such force that she suffered injuries to her body and person as hereinafter set out.

"That the metal bar placed in said doors was either worn to such an extent, or was, by defendant's servants and agents so carelessly put in place, that said bar would not hold, but dropped to the floor as aforesaid, while this plaintiff was going through said revolving door, and that when said door struck this plaintiff in the back it caused permanent injuries to plaintiff's spine, and legs;"

The petition sets forth the nature of the injuries received, damages sustained by reason thereof, and judgment in

the sum of $26,852 is demanded.

According to the undisputed evidence the door in question is one of a type installed in buildings in Tulsa and Oklahoma City and in general use throughout the United States. The door was installed by the Atcheson Door Company of Independence, Kansas. The type of the door is thus described by defendant's witness, Roy Goade, who was of the engineering department of said company:

"That is known as the type L.L.E. It is known as a panic proof, automatic, collapsible revolving door.

". . .

"It is the design of the braces between the wings of the door, so designed that whenever excessive pressure on the door, excess of that which is normally required to operate the door, will cause the braces to release, let the wings fold automatically, for use in case of emergency.

"The braces—there is one between each of the four wings of the revolving door. They are usually of cast material, the material being the same type as the door itself is made of. The braces are equipped with a stainless steel bar and a spring with an adjustable tension arrangement, and this bar fits into a stainless steel socket on the following wing, so that whenever excessive pressure is applied, — the pressure when it becomes as great as the spring tension, causes the bar to move up out of the socket and release the wing so that it can fold.

". . .

"Those are usually located 21″ off the floor.

". . .

"The pressure is supposed to range between 60 and 180 pounds."

The only evidence introduced in behalf of plaintiff touching the accident and the condition of the door was the testimony of the plaintiff and that of Mrs. Thomas Nelson, sister-in-law of plaintiff, who accompanied her to the bank. The plaintiff testified as follows:

"Q. And when you left the bank, which door or exit did you leave the bank by? A. From the side facing Woolworth's.

"Q. Now, I believe there are two doors facing the west, or facing Woolworth's, which door did you come out, the one to the left or the one to the right as you go out of the bank? A. It would be to the left.

"Q. That would then be the south door. When you went through that door, what if anything happened? A. Well, I don't know the mechanics—

"Q. Don't try to tell the mechanics, just tell us in your own words what happened? A. Something struck me in the back.

"Q. What struck you? A. The door, or bar on the door, I suppose you would call it the hand rest, but it struck me right across my back.

"Q. And did you hear or notice anything about the door? A. Yes, I heard a clanking noise and that bar or something at the bottom was hanging loose.

"Q. I see, and the other door came behind and hit you in the back, the one back of you? A. That's right. I don't know whether it was the bar on the back of me that fell loose or the one ahead of me, because I didn't see that at that time,—at the time it hit me."

And, with reference to the condition of the door after she had passed through, she testified:

"Q. Were all four of those doors—four parts of the door, were all of them in place? A. No, there was a bigger opening on the side where I had just come out of."

Mrs. Nelson testified as follows:

"Q. Did you go out ahead of her or behind her? A. Yes, sir, I went out ahead of her.

"Q. What happened, if anything, as she was coming through the door? A. Well, I heard her yell 'oh' as I got out and turned around and she said

this door had hit her in the back.

"Q. What was that, I didn't hear you? A. After I went out ahead of her, I heard her say 'oh', or some such exclamation—she exclaimed, either 'oh' or 'ouch' and I turned around and she had her hand on her back and said that the door had hit her.

"Q. Well, now, at that time now, after she had gotten out free from the door, what was the condition of those doors, were they normal or not? Just tell the Court and jury the condition of those doors. A. Well, they certainly weren't normal. . . .

"Q. No. I mean after you got out and after the door had struck her, then what was the condition of the door, as to the difference in the way it was before you went through it? A. When I went through it, there were all at a forty-five degree angle, and when I turned around, they were not.

"Q. They were not. They were about how far off from forty-five degrees? In other words, could you see clear through or were both sides together, or tell us what you saw? A. I could see through there. I wouldn't say they were snapped together, but there was a clear space through there.

"Q. In other words, was there room enough to have walked through there without the door interfering with you? A. In my opinion, yes."

Counsel offered to prove by plaintiff a statement made to plaintiff by one Guy Landes to the effect that the door in question had come loose previously and that if anyone put as much as twenty pounds pressure on the door in going through it the cross-arm would come loose. The offer was denied and the first ground of error is predicated thereon. We deem it unnecessary to review in detail the circumstances under which the statement was made. The statement could be admissible only as an admission of defendant against interest and there is no competent evidence that Landes at the time of making the statement was an agent

or employee of or was acting on authority of defendant. In Chickasha Cotton Oil Co. v. Lamb & Tyner, 28 Okla. 275, 114 P. 333, we said:

". . . There is an entire absence of any other evidence in the record to show that the person who made this statement was in any way the agent of the oil mill or had been sent by its manager. Statements made in the absence of defendant by this person, who is not shown to be defendant's agent, cannot bind defendant, and are objectionable as hearsay testimony. . . .

" . . . Admissions of an agent, in order to be admissible against the principal, must be made as agent, and while he is acting for the principal within his authority; and it must first be shown by competent evidence that such admissions were made in and as a part of the agent's performance of his duties and within the scope of his authority."

The deposition of Dr. Margaret C. Brewington, an osteopathic physician of Albuquerque, New Mexico, was introduced in evidence over objection of plaintiff, and thereon the second ground of error is based. The deponent testified that on June 8, 1945, she was consulted by plaintiff who complained of severe pain in the lower part of her back and hip. That upon examination she found a sprain in the spine which had slipped or partially dislocated one sacro-iliac articulation and that she treated the plaintiff therefor. She further testified the history of the injury given by plaintiff was that she had gotten up in the dark the previous night to take care of one of her children and tripped over a chair and injured herself in the fall. Plaintiff, on her examination in chief, testified that by reason of the pain she suffered as a result of the injury sustained at the bank she consulted Dr. Brewington on June 8, 1945, related to her the facts concerning the occurrence thereof in Tulsa, and was treated by her therefor.

It is recognized that by force of 12 O. S. 1941 §385, as construed by this

court, that a physician may testify to any communication made to him by his patient with reference to any physical or supposed physical disease, and to any knowledge obtained by a personal examination of such patient, if the patient takes the witness stand and testifies upon the same subject, but it is contended that the doctor was incompetent to testify as to the communication stated. The basis of the contention is reflected in the following statement in plaintiff's brief:

"Plaintiff did not offer any testimony on the subject of an injury or any treatment for a supposed injury that happened on June 7, 1945, but that all of Dr. Brewington's testimony went to an alleged injury subsequent to the injury about which plaintiff testified, and which injury happened in a different state, namely the injury which was the subject of this personal injury action."

Evidently, this statement is made without a due appraisal of plaintiff's testimony. Plaintiff testified in chief that it was the condition resulting from the alleged accident in Tulsa about which she consulted the doctor. And on rebuttal she adhered to that statement and expressly denied the occurrence of any fall as the cause of the injury or that she made to the doctor any statement to such effect. Hence, according to plaintiff's testimony, the subject of the consultation, the injury, was the same as that of her testimony and, therefore, the deposition was properly admitted.

At close of plaintiff's evidence in chief defendant interposed a demurrer to the evidence which was overruled by the court. Thereupon defendant introduced its evidence which stands undisputed and is to the following effect:

For years before the alleged accident to and including the time of the trial the door has been in use by numerous persons daily and throughout the time was in good working condition. That defendant was without knowledge of anyone ever being injured while passing through the door and was without knowledge or notice of plaintiff's alleged accident at or near the time thereof. That the pressure bars have fallen on occasions but the falling would be due to extraordinary pressure, usually by two people exerting such pressure or children spinning the door and one stopping suddenly. That the falling of the pressure bar between the leaves occupied by a person passing through could not cause the leaf behind the person to spring forward because it would be retained in position by the bar between it and the leaf following it. The collapse of a leaf could occur only when each of such bars had fallen. And that when both such bars fall the leaf behind such person could not spring forward without external pressure being applied because the tendency would be for such leaf to move backward because of the airlock strip thereon which would operate as a brake.

There was no evidence in rebuttal on this phase of the case.

In support of the contention that the court erred in directing the verdict there is said:

"At the end of plaintiff's testimony she had made a *prima facie* case and had thus far sustained her petition and even the trial judge thought so in that he overruled the defendant's demurrer to plaintiff's evidence. (See Journal Entry, C-m., pp. 202 and 203).

"When of course under the doctrine of *res ipsa loquitur* after plaintiff had shown that the instrumentality causing the injury was in defendant's exclusive control and that the accident was one which ordinarily does not happen in the absence of negligence, it created a rebuttal presumption that defendant was negligent."

And after quoting cases from other states to the effect that an allegation of specific negligence does not prevent the application of res ipsa loquitur, there is said:

"The defendant's evidence fell far short of being sufficient to rebut plaintiff's positive evidence and at best made it a question of fact as to de-

fendant's negligence and plaintiff's right to recover for her injury, a question for the jury."

It is then urged that plaintiff was entitled to go to the jury not only on account of the inference of negligence arising from the application of res ipsa loquitur but on the failure of defendant to warn plaintiff of the hidden peril and also on the inference of negligence that might arise from the facts and circumstances.

Such attempted analysis of the case tends to confuse rather than to clarify the issues. There is no issue other than that arising on the applicability of res ipsa loquitur and the issue thereon is one of law.

The actionable negligence of defendant other than to be inferred through operation of the doctrine of res ipsa loquitur can be none other than that which is specifically alleged in plaintiff's petition, the proof of which must rest on direct or circumstantial evidence. The failure of defendant to warn plaintiff of the danger is not alleged as a ground of action in plaintiff's petition and therefore no issue thereon can be presented. The negligence which, it is said, the jury could infer from the facts and circumstances can have reference to none other than that alleged in the petition and which is quoted above. The particular facts and circumstances which are considered to warrant such inference are not shown. But, even if there are such facts and circumstances, plaintiff cannot rely on the inference of negligence therefrom and, at the same time, upon the presumption of negligence based upon res ipsa loquitur. Bewley v. Western Creameries, Inc., 177 Okla. 132, 57 P. 2d 859. The reason therefor is stated in E. S. Billington Lumber Co. v. Cheatham, 181 Okla. 402, 74 P. 2d 120, as follows:

"The correct principle, as we gather from our decisions, is that where the evidence raises no issue as to the specific allegations of negligence, the plaintiff may resort to his general allegations, if any, and invoke the doctrine of res ipsa loquitur where the facts and circumstances as to the instrumentality and resultant injury as above set out are present. However, if the evidence raises an issue on the specific acts alleged, the reason for the application of the doctrine is thereby removed from the case. Bewley v. Western Creameries, Inc., supra. There the court specifically held that the doctrine in question does not apply where there is evidence to establish the cause of the accident, or, in other words, where there is evidence to establish the specific acts alleged."

In plaintiff's case in chief no evidence was presented that tendered an issue upon the alleged negligence of the defendant. The situation presented on defendant's demurrer to plaintiff's evidence was one to which res ipsa loquitur was applicable if the facts warranted. But it does not follow from the fact the court overruled the demurrer that plaintiff had established a prima facie case and thereby shifted the burden of proof to the defendant as contended. In the Billington case (supra) we said, in second paragraph of the syllabus:

"Where an inference of negligence may properly arise under the doctrine of res ipsa loquitur, the burden is upon defendant to overcome such inference by proper evidence in rebuttal or explanation thereof, and it is within the province of the jury to determine the issue thus arising by drawing the inference and weighing the rebuttal evidence as against the same."

Such inference can properly arise only where the applicability of the doctrine is established. And it cannot be considered as established, and hence a prima facie case made by the overruling of the demurrer, unless the facts warrant the conclusion that the essentials to the application obtain. In Texas Co. v. Jamison, Admr., 191 Okla. 283, 129 P. 2d 85, where the trial court assumed the existence of such essentials, considered plaintiff's case as prima facie proven and accordingly instructed the jury, we said:

"We see that at least three times in these two instructions the trial judge instructed the jury that a prima facie case had been made for the plaintiff and thus relieved the jury of the duty of weighing all of the evidence to see whether the plaintiff had sustained the burden that rested on him to establish facts that brought into play the rule of res ipsa loquitur.

"We have said in many cases that res ipsa loquitur is based on two essentials: (1) the 'thing' must be under the management or control of the defendant; and (2) the accident must be of such a character that it can be said that it would not occur but for a want of care on the part of those having its management or control. Champlin Refining Co. v. George, 182 Okla. 118, 76 P. 2d 895; Carter Oil Co. v. Independent Torpedo Co., 107 Okla. 209, 232 P. 419; J. C. Penney Co. v. Forrest, 183 Okla. 106, 80 P. 2d 640; and other cases.

"The instructions quoted above are erroneous for they assume that these two essentials were admitted by the defendant's answer and in addition were made to appear conclusively from these admissions and the plaintiff's evidence."

The question presented to the trial court on the motion for a directed verdict was whether there was sufficient evidence of the existence of said essentials to require submission of the issue thereon to the jury. A case of like character and involving the same question is Farina v. First National Bank, 72 Ohio App. 109, 169 A.L.R. 1341, 51 N. E. 2d 36, and what is said therein is peculiarly in point here. We quote:

"It is argued in the present appeal, from an inference drawn from the proven fact of collapse, that this safety feature of the appliance was inherently dangerous or that its safety device was out of repair. There is no proof of either supposition. In truth the proof adduced shows the contrary to be true. Here we find a door equipped with a safety device for the laudable purpose of protecting the public against the hazard of a panic. The worth of such a door is aptly illustrated by the recent Coconut Grove disaster.

"It is not a new device, but one in general use and, by constant hard daily use over a number of years, defendant has in fact proved that such a type of construction is not inherently dangerous. Inferences deducible from proven facts must be logical and reasonable. We cannot find under the proven facts that defendant was negligent in the selection and use of this kind of door.

"We come now to the principal question before the court. The plaintiff recognizes that the rule of res ipsa loquitur cannot be invoked unless the injured party can show that the instrumentality, at the time of the injury, was under the management and the sole and exclusive control of the one against whom the rule is sought to be applied; and that in the ordinary course of events use of the appliance, had due care been exercised, would not have resulted in injury. This is the rule as stated in Sherlock v. Strouss-Hirshberg Co., 132 Ohio St. 35, 4 N.E. 2d 912. It is further observed, inasmuch as the doctrine is not one of substantive law but a rule of evidence, that, as pointed out in Glowacki, a Minor, v. North Western Ohio Ry. & Power Co., 116 Ohio St. 451, 157 N. E. 21, 53 A.L.R. 1486, the rule does not spring from a presumption but rests upon an inference which a jury may, by data based upon common experience, draw from facts that are proven. Guided by these authorities we pose the question: Was the defendant in the sole and exclusive control of the revolving door at the time of plaintiff's injury? We think not.

"This door, as well as doors of like design, did not and does not operate itself. It was made available by the bank, but was not being operated by it. By the plaintiff's own testimony she was operating the door when a wing collapsed. She had to exercise some force to procure an exit from the banking room. In fact, unless another person was within the door at the time, she was the sole agency which caused it to revolve. This being true, then, at the time of injury, the bank had no control thereover."

In an annotation following the report of the case in A.L.R. the author, on authority of cases cited, stated the following:

"The res ipsa loquitur doctrine that proof that the instrumentality causing an injury was under the control and management of the defendant and that the occurrence was such as in the ordinary occurrence of things would not have happened if those who had its control and management would have used ordinary care, is generally limited in its application to those cases where it appears that the instrumentality which produced the injury was under the sole and exclusive control and management of the defendant (see 38 Am. Jur. 996, Negligence, sec. 300), and accordingly the courts have refused to apply the doctrine in cases involving revolving doors."

We deem it an indisputable fact that the revolving door was not an instrumentality under control of defendant at the time of the accident. That such control is essential in order to invoke the doctrine is likewise clear. Carter Oil Co. v. Independent Torpedo Co., 107 Okla. 209, 232 P. 419; Pine v. Rizzo, 186 Okla. 35, 96 P. 2d 17; Texas Co. v. Jamison, 191 Okla. 283, 129 P. 2d 85; Soter v. Griesedieck Western Brewery Co., 200 Okla. 302, 193 P. 2d 575; Canada Dry Ginger Ale, Inc., v. Fisher, 201 Okla. 81, 201 P. 2d 245.

We hold that the doctrine of res ipsa loquitur cannot be invoked by a bank customer who was injured by the collapse of a wing of a revolving door of the bank building as she was operating the door in attempting to depart from the building through it, since at the time of the injury the bank had no control over the door.

The trial court did not err in directing the verdict for defendant.

Judgment affirmed.

DAVISON, C. J., and CORN, LUTTRELL, and JOHNSON, JJ., concur. WELCH, J., concurs in result. O'NEAL, J., dissents.