MID-CONTINENT PIPE LINE CO. v. PRICE.

No. 33724.   Oct. 3, 1950.

Rehearing Denied Dec. 12, 1950.

*225 P. 2d 176.*

R. H. Wills, J. H. Crocker, J. P. Greve, J. H. Woodard, Oscar E. Swan, Jr., and Ben Hatcher, all of Tulsa, for plaintiff in error.

Homer Bishop, of Seminole, Clem H. Stephenson, of Wewoka, and James R. Eagleton, of Oklahoma City, for defendant in error.

WELCH, J. F. D. Price, administrator of the estate of John Mitchell (Dick) Justus, deceased, recovered judgment against Mid-Continent Pipe Line Company for the wrongful death of Justus, and the defendant company has appealed.

The deceased had been employed by the defendant as a pipe-line laborer. As such and at the direction of the defendant he had worked at rolling pipe on a pipe rack in an area enveloped with smoke or fumes emanating from an adjacent operation where hot coal tar enamel was being applied to pipe. Death came from an involvement of the lungs.

The plaintiff alleged that while carrying on the work assigned by the defendant, the deceased had breathed poisonous smoke or fumes and that said smoke or fumes injured deceased's lungs and caused his death; that defendant was guilty of negligence in failure to warn deceased of the dangers incident to his work and that defendant violated the duty to furnish deceased a reasonably safe place in which to work in failure to provide deceased with reasonably safe equipment as protection against said smoke and fumes.

The defendant contends there was no sufficient evidence to establish a violation by defendant of a duty to warn deceased of dangers incident to his work or to establish a violation by defendant of a duty to furnish deceased a reasonably safe place in which to work, and that it was not established that defendant's negligence was the proximate cause of the death.

The record reflects that defendant employed a contractor to coat and wrap pipe and place it on defendant's pipe rack. In the coating operation pipe enamel of a specification prescribed by the defendant was heated to a high degree of temperature and flowed over the pipe. At such times acrid fumes and smoke escaped from the vessels containing the hot enamel. At times the fume filled smoke was of such density as to settle and form clouds on and over the surrounding ground. It was shown that workmen on contact with such fumes and smoke ofttimes sustained facial and eye burns and sometimes of a severity as to require medical treatment. There was medical testimony to the effect that one breathing smoke and fumes of such concentra-

tion of poison as to burn the face and eyes would likely suffer injury to the lungs. There was medical testimony to the effect that one of the employees of the pipe coating contractor had sustained a lung ailment caused from inhalation of smoke and fumes from the coating operations. Said employee last worked at the coating operation and became ill on a day prior to the afternoon when the deceased was caused to enter an area enveloped with smoke and fumes from the coating operations in the performance of the work assigned by the defendant. It was shown that deceased in the course of his employment with defendant had not theretofore been compelled to come in contact with smoke and fumes from pipe coating operations, and so far as known to defendant was without experience or knowledge concerning such smoke and fumes and its probable effects. The defendant's employees had general instructions from time to time by defendant's safety department to wear goggles whenever their eyes were in danger and to use ungentine for burns, but no special instructions or warnings were given relative to dangers in smoke or fumes from hot pipeline enamel or in breathing smoke and fumes. The defendant in operation of its pipeline and in procuring its pipe to be coated with hot enamel and in sending its employees into an area enveloped with fumes and smoke from said hot ·enamel was bound to know of the poisonous or dangerous effects of the fumes, and was charged with the knowledge that the deceased had not theretofore in their employ encountered such fumes and the defendant in the exercise of ordinary care was bound to have given warning of such dangers. In Mid-Continent Petroleum Corp. v. Jamison, 197 Okla. 387, 171 P. 2d 976, the general rule is stated in quotation from 39 C. J. 491, as follows:

" ' Regarding the duty to warn employees of the hazards of the work, the master is charged with knowledge of the usual and ordinary dangers and hazards to which he is exposing his employees, and is bound to know the normal condition of his premises, and to know of the nature of the constituents and general characteristics of the substances used in his business, so that he can give directions for the conduct thereof with ordinary safety to his servants performing the work with ordinary care; and particularly is the master chargeable with a knowledge of risks ascertainable only through a knowledge of scientific facts which an uneducated man is not presumed to know; the doctrine that imputes this knowledge to the master is called the "assumption of skill," and for the purpose of determining this knowledge the law has a standard which does not vary with the actual capacity of the particular master, and consequently his ignorance is no excuse for a failure to warn; . . . .' "

In the first and second paragraphs of the syllabus in the Jamison case, it was held:

"It is the duty of a master who has actual knowledge that a servant is inexperienced in the work for which he is employed to use reasonable care in cautioning and instructing such servant in respect to the dangers he will encounter, and how best to discharge his duties.

"The master's liability in respect to warning his servant depends upon his knowledge, actual or constructive, of the danger to which his servant is exposed, and such master is guilty of negligence if he knew or ought, in the exercise of ordinary care and diligence, to have known that a warning was necessary."

The deceased had worked an afternoon at rolling pipe and the following day had face burns and "coughed and spit up." In the course of rolling the pipe he was at intermittent periods within five to twelve feet of the hot enamel, and at such times was within an area enveloped with smoke and fumes from the enamel vessels. He worked the following day for the defendant, and with a Sunday intervening, he worked the next three days all in a vicinity away from the pipe coating

operations. Following this last day of work for the defendant he became ill at his home and a physician was called to attend him. He was removed to a hospital where, after three days, he died. The attending physician diagnosed his case as pneumonia. The physician testified that deceased had a very marked inflammation of the lungs; that he had a very diffused pneumonia; that it was scattered throughout his lungs; that he couldn't take fluids by the mouth and he would spit up like he was choking; that he couldn't take fluids at all; that fluid was injected into his veins and he choked worse than he did before; that he was getting fluid into the lung tissue; that anything that would irritate the lung tissue could cause fluid there; that he didn't respond to treatment as an ordinary pneumonia patient. The physician testified to a long and varied experience in treatment of pneumonia cases and stated that he had never seen a case of pneumonia exactly like that had by the deceased in that there was no response at all to the treatment that was given; that ordinarily, in cases of death from pneumonia, the immediate cause is toxemia, a poison resulting from pneumonia; that his patient died too soon to account for toxemia; that he had a waterlogged lung; that his patient's "lungs filled up with fluid to where he couldn't get air in there and he died for that reason;" that in diagnosis pneumonia "more nearly gives the answer than anything else." The witness stated that an inhalation of fumes of sufficient concentration of poisons as would burn the lung tissue could cause such condition as exhibited by the deceased and would explain lack of response to treatment. The witness further stated that inhalation of poisons of such violence would be expected to cause immediate illness.

Another physician called as a witness by the plaintiff, on being given a history of the work experience and last illness of the deceased as was shown by the evidence, expressed opinion of the effect and substance that plaintiff's decedent came to his death as a result of inhalation of fumes from the pipe coating operations. Specifically the witness expressed an opinion from the history given that the man died from what the witness termed hypostatic pneumonia. In explanation of that term the witness stated "it is a collection of blood or blood serum in the lungs and that drowns the patient if it accumulates too rapidly." The witness gave testimony to the effect that hypostatic pneumonia occurs in young persons, and persons of the age of the deceased, only when irritating or poisonous matter is taken into the lungs; that such irritant in the lungs causes a collection of blood serum; that nature can throw it off if it isn't too much, but if it is so violent that it cannot be thrown off, it will fill the lungs from the base up and drown the person in his own body fluid; that inhalation of fumes as would irritate the outer skin would irritate the lung cavities and start a collection of a body fluid at such points of irritation. The witness gave testimony of experience with two patients who gave a history of inhalations of fumes from coal tar preparations being applied to pipeline pipe and that each had a collection of fluid in air cavities of their lungs. One of said patients, a witness in this case, testified that he suffered from skin burns and inhaled fumes and became ill while working in the fumes from the pipe coating operations here involved.

Another physician witness called by the plaintiff gave an opinion based on an hypothesis of fact reflected by evidence herein. The witness stated that breathing of the fumes started the trouble that caused the deceased to die.

In defense it was shown that the product used in the coating operation was of a standard brand and grade in long general use in the industry, and likewise the procedure in application was that in general use in the industry. Witnesses testified to long experience in the industry and with such product

and procedure and that pulmonary illness in the industry was unknown to them. The defendant presented witnesses of unquestioned professional qualifications as chemists and physicians, respectively, who gave testimony concerning chemical analysis of the standard brand product such as was used in the coating operations and the effects of such chemicals in gaseous form. There was testimony of a field test where the product was heated and analysis made of the fumes arising therefrom, and testimony to the effect that fumes arising therefrom into the open air and at a distance of five feet from the heating vessel did not contain such concentration of poisons or irritants as would injure the lungs of a person breathing and working in the area. Physician witnesses, on a hypothesis of the chemical analysis of the fumes, and a history of the deceased's work, illness, treatment and death as shown by the evidence, expressed opinion that the deceased suffered no injury to his lungs in connection with his work at rolling the pipe for the defendant in the area of the fumes.

The weight and value to be given this testimony and all the other testimony and evidence was for the jury to determine.

"The credibility of a witness and the effect and weight to be given to inconsistent or contradictory testimony are questions of fact, to be determined by the triers of fact whether court or jury, and not questions of law for the court. It is peculiarly within their province to weigh the testimony of the witnesses, as well as all the facts and circumstances tending to corroborate or to discredit them, and determine the case according to the preponderance of the evidence." Seekatz v. Foltz, 118 Okla. 159, 247 P. 413.

In Oklahoma Natural Gas Co. v. Kelly, 194 Okla. 646, 153 P. 2d 1010, said the court: .

"Where there is a conflict in the testimony of qualified experts, the jury or trier of the facts has the duty to weigh such testimony and determine where the weight lies.

"Proof of a fact that must be established by expert testimony need not rest entirely upon such testimony, but may rest in part upon nonexpert testimony."

In Kansas, O. & G. Ry. Co. v. Dillon, Adm'x, 191 Okla. 671, 135 P. 2d 498, the following rules are stated:

"It is the duty of the trial court when ruling on motion for directed verdict, at the close of all evidence, to disregard all evidence unfavorable to the party against whom the verdict is sought, as well as incompetent evidence, and concede to be true all evidence supporting the view of the party against whom the motion is made. When this has been done, unless no recovery can be had on any view of plaintiff's evidence, the case should be left to the jury.

"In a civil case, all the plaintiff is required to do in order to establish his claim is to make it appear to be more probable that the injury came in whole or in part from the defendant's negligence than from any other cause, and this fact may be established by circumstantial evidence and the reasonable inferences to be drawn therefrom."

In Casualty Reciprocal Exchange et al. v. Sutfin, 196 Okla. 567, 166 P. 2d 434, in the body of the opinion the court said:

"It is the settled rule in this jurisdiction that if there is any evidence which reasonably tends to prove either directly or indirectly or by permissive inference the essential facts, the verdict of the jury must stand. Malernee Oil Co. v. Kerns, 187 Okla. 276, 102 P. 2d 836. Negligence may be established by circumstantial evidence and the reasonable inferences to be drawn therefrom, and the proximate cause of the injury may also be determined from circumstantial evidence, Griffin Grocery Co. v. Scroggins, 145 Okla. 9, 293 P. 235; Marland Refining Co. v. Snider, Adm'r, 125 Okla. 260, 257 P. 797. Where there is competent evidence on the question of negligence introduced from

which reasonable men might draw different conclusions, it is one for the jury, and under like circumstances the question of proximate cause is one for the jury. Palacine Oil Co. v. Philpot, 144 Okla. 123, 289 P. 281; Highway Const. Co. v. Shue, 173 Okla. 456, 49 P. 2d 203."

From the testimony of the expert witnesses called by the plaintiff and the circumstances in proof, a conclusion may be reached that it is more probable that the deceased came to his death from breathing the smoke and fumes than from any other cause, and that defendant should have known the dangers of breathing said fumes and that it was necessary to warn the deceased against breathing said fumes or furnish deceased with respirator to prevent injury.

We find the evidence sufficient to support a verdict in favor of the plaintiff.

The defendant contends the trial court erred in giving its instruction No. 13, and in refusing to give defendant's requested instructions Nos. 19, 20 and 21.

Instruction No. 13 is in the following language:

"In this case, gentlemen of the jury, testimony has been given by certain witnesses, who, in law, are termed experts and in this connection you are instructed that so far as the expert testimony is concerned, you will consider that and treat it in the same manner as you would treat any of the other testimony in the case. The simple fact that it was offered by experts does not compel you to take their testimony in preference to any other, but you should give the testimony of the expert witnesses the same right, the same consideration everything else being equal, as that of any other witnesses.

"In this connection, you are further instructed that while in cases such as the one being tried, the law receives the evidence of certain men, expert in certain lines, as to their opinions derived from their knowledge of particular matters; the ultimate weight which is to be given to the testimony of expert witnesses is a question to be determined by the jury, and there is no rule of law which requires you to surrender your own judgment to that of any person testifying as an expert witness, or to give controlling effect to the opinion of scientific witnesses; in other words, the testimony of an expert, like that of any other witness, is to be received by you and given such weight as you think it is properly entitled to; but you are not bound by the testimony of any witnesses, expert or other."

The defendant contends that the effect of instruction No. 13 is to advise the jury that it may ignore the opinions of expert witnesses and determine an issue of fact that is one of science from their own experience or wholly upon the testimony of persons untrained and unskilled in the science. In support of the contention reference is made to the language, supra:

" . . . and there is no rule of law which requires you to surrender your own judgment to that of any person testifying as an expert witness, or to give controlling effect to the opinion of scientific witnesses; . . ."

We find no such meaning or intendment in the instruction given as is contended for by the defendant. The language last above quoted, when considered in connection with the language of the rest of the sentence of which it is a part, does not in our judgment convey such meaning as claimed by the defendant, nor do we find in the whole sentence a statement of a rule of law violative of defendant's rights.

The defendant requested an instruction which is, in the substance, if not in the precise language, of the rule stated in Willet v. Johnson, 13 Okla. 563, 76 P. 174. Therein in the eighth paragraph of the syllabus the court held:

"Where the injuries are of such a character as to require skilled and professional men to determine the cause

and extent thereof, the question is one of science, and must necessarily be determined by the testimony of skilled professional persons, and cannot be determined from the testimony of unskilled witnesses having no scientific knowledge of such injuries."

And further, the defendant requested that the jury be advised that the proximate cause of the death of John Mitchell Justus and the lung ailment of the deceased and the cause and extent thereof were questions of science, and that the jury has a duty to weigh and consider the testimony of the expert witnesses in arriving at the answers to these questions, and in effect that the jury be advised that they are not to consider any other testimony or their personal knowledge in arriving at an answer to such questions.

The rule above quoted and as embodied in defendant's requested instructions is obviously applicable in guidance of the trial court in determining when opinion and expert testimony is admissible in evidence.

In Empire Oil & Refining Co. et al. v. Fields, 181 Okla. 231, 73 P. 2d 164, it is said:

"Where a plaintiff's injuries are of such a character as to require skilled and professional men to determine the extent and cause thereof, the question is one of science and must necessarily be supported and determined by the testimony of skilled professional men; and, where there is no such testimony as to the cause of a person's injuries and physical condition, the trial court should not submit such injuries or condition to the jury."

When, as here, the trial court has found there are questions of science which are determinable from the testimony and opinions of expert witnesses, and has accordingly admitted and received the testimony and opinions of expert witnesses, like in the determination of other questions of fact, the credibility of the witnesses is a matter for the determination of the jury and it is the province of the jury to weigh the testimony of the witnesses, as well as all the facts and circumstances tending to corroborate or to discredit them and determine the case according the preponderance of the evidence.

In Producers' Oil Co. v. Eaton, 44 Okla. 55, 143 P. 9, it is said:

"A jury cannot be instructed to wholly disregard the admissible opinions of expert witnesses, nor that no reliance is to be placed on or aid gained from the same; but it is not error to instruct them that they may disregard such evidence if they deem it unreasonable or not entitled to belief because of other and contradicting evidence from witnesses claiming positive knowledge."

The rule from Oklahoma Natural Gas Co. v. Kelly stated, supra, here bears repeating:

"Where there is a conflict in the testimony of qualified experts, the jury or the trier of the facts has the duty to weigh such testimony and determine where the weight lies."

In effect, the instructions given herein advise the jury that the case being tried is one in which the law receives the evidence of certain men, expert in certain lines, as to their opinions derived from their knowledge of particular matters, and that the testimony of the experts is to be received by the jury like that of other witnesses, and that the jury is the exclusive judge of the credibility of each witness and is to determine the weight and value to be given the testimony of each witness.

The effect of the instructions as requested by defendants is to point out the basis for the reception of the expert testimony and to point out the particular questions to which such testimony is applicable and to advise the jury of its duty to weigh and consider the testimony of the expert witnesses in arriving at the answer to said questions.

The instructions as given effectually advise the jury of its duty to weigh

and consider the testimony of the expert witnesses in their determination of the issues in the case. The instructions requested are of the same effect except they would have the court advise the jury of particular questions to which the expert testimony was applicable. The latter was a matter so obvious to the jury in the course of its hearing of the testimony as not to require any special mention in the instructions.

We find the law as given is applicable and that no right was violated or prejudice suffered by the defendant in failure of the court to give the instructions as requested by the defendant.

The judgment is affirmed.

ARNOLD, V.C.J., and CORN, JOHNSON, and O'NEAL, JJ., concur.