HORWITZ IRON & METAL CO. et al.
v. MYLER.

No. 35115.    Dec. 23, 1952.

Rehearing Denied Jan. 20, 1953.

252 *P. 2d* 475.

Rucker & Tabor, Tulsa, for petitioners.

Sanders & McElroy, Tulsa, and Mac Q. Williamson, Atty. Gen., for respondents.

692

Welcome D. Pierson and Edward Spiers, Oklahoma City, for plaintiffs in error.

McDonald, Tinker, Skaer, Quinn & Porter, Wichita, Kan., and Dyer & Powers, Tulsa, for defendant in error.

O'NÉAL, J. Carroll S. Myler recovered a judgment against Horwitz Iron & Metal Company, a copartnership, as damages for personal injuries received on March 29, 1948.

The parties will be referred to as plaintiff and defendants as they appeared in the trial court, or, for clarity, as Myler and Horwitz, and the employer of Myler, as Lee Way.

For several years prior to the date of the accident here involved, plaintiff was employed by the Lee Way Motor Freight, Inc., a company engaged in the transportation of heavy goods in interstate commerce. The Horwitz Iron & Metal Company were engaged in commerce and trade as wholesalers and retailers of used and new pipe and structural steel.

Myler was instructed by Lee Way to proceed to the Horwitz establishment in Oklahoma City to pick up certain merchandise for transportation. Upon arrival at the yard he procured the bill of lading from Horwitz and was directed to proceed to the yard where Horwitz's employees would load the merchandise on his van; said merchandise consisted of two sheets of steel weighing approximately 1,400 pounds each. These sheets were approximately 18½ feet long, 5 feet wide and 3/8 of an inch thick. Horwitz's A-Pole Winch truck had been spotted or placed near the steel plates for convenience in loading them on Lee Way's van. Three of Horwitz's employees proceeded to load the steel sheets in the following order: A friction type clamp was attached to the sheet near the center running edge. The winch operator, one of Horwitz's employees, raised the sheet so that the running edges were parallel with the ground and the five and one-half feet edges were perpendicular to the ground. The clamp was connected to a winch line running upwards and over the A-Pole of the defendants' truck, then downwards to the winch drum on the truck. By the operation of the truck's motor, the winch elevated the steel sheet.

Myler's van was placed near the defendants' winch truck in a diagonal position. Myler remained in the cab of his truck as Horwitz's employees lifted the sheet as indicated. Myler was directed by one of the defendants' employees to back his van and by his operation the steel sheet was partially inserted into the van. When Myler got out of the Lee Way van he observed that the operator of the winch truck was seated in the cab of the Horwitz winch truck and that two of defendants' employees were holding to the end of the steel sheet extending out of the van to keep the sheet in an upright position. Myler, seeing that all of Horwitz's employees were engaged and could not release and reset the clamp at a new position, entered the back of his van with the purpose of releasing the clamp and replacing it near the end of the steel sheet so that the winch pole could shove the entire sheet forward into the van. The sheet at this time was standing in a vertical position against the side of the van, the bottom extending about 18″ from the side. The winch line was slackened by Horwitz's operator of the truck and, thereupon, Myler loosened the clamp and slid it backward along the upper edge of the sheet. The clamp slid off the edge and he attempted to replace it, but was unable to close the clamp. At this point the sheet toppled over upon Myler, pinning him underneath it. Although two of the defendants' employees were holding the end of the sheet extending out of the rear of the van, they were unable to prevent it from falling. As a result Myler received serious injuries, one of which was the loss of his left leg. These injuries were of a serious nature requiring repeated surgery and long hospitalization. No serious contention is made as to the extent of Myler's physical injuries, which resulted in the amputation of his leg above the knee.

Although plaintiff had assisted in loading merchandise at defendants' plant on previous occasions, he had not assisted in loading steel sheets of the size and weight as those loaded on the date of the accident. The defendants' employees were experienced in similar loading operations and knew the dangerous character of the work. They did not advise plaintiff of the danger of his position as he entered the loading van.

As to the condition of the clamp used in the loading operation, the evidence is in sharp conflict. Plaintiff testified it was old, rusty, and beat up with hammers to where it would not work properly.

On the date of the accident, defendants had three Volz clamps which were in general use at their plant. Defendants, however, were unable to state which one of the clamps was used in the loading operation. They did not produce either of the clamps for visual examination of the jury, giving as a reason that they were in use at the plant. Moreover, the defendants' foreman testified that "our employees don't get into the truck and load the steel that way." Jess Berryman, who was assisting his fellow employee in attempting to hold the sheet in a vertical position, stated that he observed Myler get out of the cab of his van and enter the van from the rear and observed Myler take off the clamp and attempt to refasten it; but that the witness did not advise Myler of the danger of so doing. He also gave evidence tending to establish that the particular method of loading undertaken by the defendant with the type of equipment and the number of men employed, was a dangerous operation and very hazardous, and that the method employed was not regarded as safe by those familiar with such operations.

Three witnesses, experienced in the loading of heavy equipment, gave it as their opinion that the use of a single tension clamp was not a safe operation, because the minute the load was relieved with this single type clamp it has a tendency of releasing the particular clamp used. They also expressed their opinion that this difficulty could be avoided by the use of a sling type

to lift the steel sheets to the height of the loading van, then lowering the sling and taking it back to the end of the sheet and hoisting it again, and by the use of pipe rollers to inject the sheets into the van; that such operation could be conducted in a manner to obviate the necessity of leaning the sheets in a vertical position in the van.

Plaintiff's evidence also sustains his contention that the teeth of the friction clamp were worn, corroded and filled with dirt and grease, which caused it to slip from a fixed position. This contention was denied by the evidence of the defendants. Their evidence supports their contention that the type of clamp used in the loading operation was the kind customarily used for loading sheets of steel. Also, that the clamp was in a good workmanlike condition and was constantly in use in such operations. Suffice it to say that this issue was submitted to the jury under instructions not here complained of and the issue was resolved in plaintiff's favor.

We have uniformly held that if there is any competent evidence which with all inferences reasonably to be drawn therefrom tends to support the verdict of the jury, the judgment thereon will not be reversed on the ground of insufficiency of the evidence.

The rule is aptly expressed in our opinion in Mid-Continent Pipe Line Co. v. Price, 203 Okla. 626, 225 P. 2d 176. In that case we said:

"Where competent evidence is introduced on the question of negligence from which reasonable men might draw different conclusions, it is one for the jury, and under like circumstances the question of proximate cause is one for the jury."

We are unable to agree with defendants' contention that the verdict is excessive. Plaintiff's knee cap was badly injured which required surgery. A parasympathetic block was performed and shortly afterwards amputation of the leg above the knee. Some months thereafter, two additional operations were performed on the leg to relieve excessive pain. There was evidence of both physical and mental shock. The damages here recovered were in the sum of $26,000. Our statute, 23 O.S. 1951 §97, provides that damages must be reasonable.

In the case of City of Norman v. Lewis, 180 Okla. 344, 69 P. 2d 377, we said:

"In an action for personal injuries, the jury is charged with the duty of fixing the amount of damages, and its verdict will not be set aside as excessive unless it clearly appears that the jury committed some gross and palpable error or acted under some improper bias, influence, or prejudice."

Defendants seek an avoidance of the verdict and judgment thereon upon the assertion that plaintiff, as an employee of Lee Way, cannot maintain an action for damages against Horwitz, under the admitted facts disclosed by the record.

After plaintiff's injury, he filed a claim with the State Industrial Commission against Lee Way, his employer and they complied with the applicable provisions of the Workmen's Compensation Act, 85 O.S. 1951, by furnishing plaintiff medical services and temporary compensation, and upon a joint petition a settlement was agreed upon and the sum of $3,942.49 paid plaintiff for the loss of a leg, plus a bonus of $267.49. These matters were pleaded by defendants as an effective defense against a recovery and the defendants here assert that the trial court was without jurisdiction of the subject matter of the present action.

In Mid-Continent Pipe Line Co. v. Wilkerson, 200 Okla. 335, 193 P. 2d 586, we said:

" 'The question of jurisdiction is primary and fundamental in every case, and must be inquired into and answered by this court both as to its own jurisdiction as well as to the jurisdiction of the court from which the appeal is taken, whether raised by any party or not.' "

To support defendants' contention that the trial court did not have jurisdiction

of the subject matter or cause of action pleaded by Myler, we are urged to give consideration to the Mid-Continent Pipe Line Co. v. Wilkerson, supra, upon plaintiff's assertion that the law there announced is controlling here. A careful reading of the case discloses the decision is based upon facts entirely dissimilar to the facts in the instant case.

In that case the Mid-Continent Pipe Line Company and the Pipe Line Service Company, an independent contractor, were jointly engaged in reconditioning the former's pipe line. Each company furnished men in the performance of the work. Wilkerson, an employee of the Service Company, was injured in the course of the common service of the work being performed. Wilkerson, in his action against the Pipe Line Company, contended that his injuries resulted through the negligence of an employee of the Pipe Line Company. The action involved the construction of 85 O.S. 1951 §§11, 12 and 44 of the Workmen's Compensation Law. The Pipe Line Company contended that it was absolved of all liability under §§11 and 12 of the Act, for the reason that it had required its independent contractor, the Service Company, to provide workmen's compensation insurance as provided by the Act.

Answering this contention Justice Davison, in a concurring opinion, said:

"To say that 'compliance with the Workmen's Compensation Law of this State' by an independent contractor consists of and ends with such independent contractor securing workmen's compensation insurance covering his employees, or becoming self-insured, would relieve the principal employer from being secondarily liable, would in many instances cause grave consequences to workmen entitled to compensation where no acts of negligence could be relied upon."

The decision otherwise is based upon the assumption that the Service Company was an independent contractor. In the opinion it is stated:

"For the purpose of our review we will accept as true but will not decide that Service Company was an independent contractor, and consider that the liability of defendant is only that which is imposed by the Workmen's Compensation Law upon the principal employer for injuries to employees of an independent contractor."

Moreover, we find that plaintiff alleged that the Service Company was an independent contractor and carried workmen's compensation insurance. We therefore held that the Workmen's Compensation Act provided the exclusive remedy and that the plaintiff could not sustain a common-law action against the Pipe Line Company.

We further said that section 44 of the Act did not create a new cause of action, but left in full operation all causes of action which were not taken away by the specific provisions of §§11 and 12 of the act.

It will thus be seen that the decision is based on the finding that the relationship of the parties removed the Pipe Line Company as a third party (under section 44 of the Act) and made it a (principal employer) under section 11 of the Act.

Our decision in Jordon v. Champlin Refining Co., 200 Okla. 604, 198 P. 2d 408, and Deep Rock Oil Corporation v. Howell, 200 Okla. 675, 204 P. 2d 282, are based upon comparable facts disclosed in the Wilkerson case.

In each of the latter cases it was held the employee's right of action for injuries arising out of and in the course of hazardous employment and jurisdiction of courts thereover, with certain exceptions, are abrogated by Workmen's Compensation Law (85 O.S. 1951 §1 et seq.)

It will thus be readily seen that in the three cited cases a true relationship of the contractor and independent contractor was shown to exist. In each case the work being performed by the independent contractor was an integral part of work necessary in the conducting of the contractor's business.

In the instant case the relationship of an independent contractor is not involved, neither is it shown that the particular service rendered by Lee Way was an integral part of the business being conducted by Horwitz.

Defendants' contention of nonliability can only be sustained upon the proposition that Horwitz, by virtue of 85 O.S. 1951 §11, was the "principal employer" of Myler, and as such employer was liable to Myler for compensation, provided Lee Way, Myler's "immediate employer," had not made the compensation payment provided by the Act. Under this premise, Horwitz would not be liable in an action at common law, for the reason that the express provisions of section 11 of the Act makes Horwitz secondarily liable for accidents and injuries to Lee Way's employees. However, if Horwitz is not secondarily liable, section 11 has no application, and the injured employee of Lee Way may invoke his common-law right to recover against the wrong-doer. Section 44 of the Act did not create a new right, for the common-law right always existed.

We have heretofore been called upon to construe contractual relationships where one business enterprise has contracted with another for the performance by the latter of a special service, and whether the first party, by virtue of section 11 of the Act, became secondarily liable as a "principal employer" and thereby limiting jurisdiction to the Industrial Commission.

The question here posed is, "Was Myler, under the admitted facts, an employee of Horwitz?" The admitted and proven facts are that Myler was an employee of Lee Way, engaged for years as a truck driver. Lee Way instructed him to proceed to Horwitz's place of business for the purpose of obtaining merchandise for transportation in interstate commerce. Myler obtained bill of lading from Horwitz, and was instructed to proceed to the yard where Horwitz's employees would load the merchandise upon Lee Way's van. Myler was not requested by Lee Way, or by Horwitz, to assist in the loading operation. After the sheet of steel was partially injected into the van, Myler, voluntarily and without request of any of Horwitz's employees, got out of his van, went to the rear end thereof and re-entered the van and was injured as heretofore related. Neither Horwitz nor Lee Way authorized Myler to assist in the loading operation.

In the case of Hogan v. State Industrial Commission, 86 Okla. 161, 207 P. 303, we held that under the Workmen's Compensation Act no recovery could be sustained by the applicant receiving injuries at a cotton gin where the facts disclose the injured person voluntarily assisted an employee of the gin company in making a repair to the gin machinery, for the reason that the relationship of master and servant did not exist under the related facts, and in Manahan Drilling Co. v. Wallace et al., 179 Okla. 613, 67 P. 2d 1, we said:

"Whether there is sufficient showing by the evidence to establish the relationship of employer and employee is a matter for review by this court."

As we view the record, the present action is controlled by our decisions in Chickasha Cotton Oil Co. v. Strange, 186 Okla. 136, 96 P. 2d 316; Amerada Petroleum Corporation v. Vaughan, 200 Okla. 226, 192 P. 2d 639, and Parkhill Truck Co. v. Wilson, 190 Okla. 473, 125 P. 2d 203.

In the case of Chickasha Cotton Oil Co. v. Strange, supra, the fact discloses that Dalrymple entered into an agreement with the Cotton Oil Company to transport, by truck, cotton seed hulls. Dalrymple employed two men to do the hauling. Strange, one of the haulers, received an injury during a loading operation. The Industrial Commission allowed compensation under the Act and we reversed on the ground that there was no obligation upon the Cotton Oil Company to require Dalrymple to provide insurance covering his operations and, therefore, the Cotton Oil Company was not secondarily liable.

In the opinion, we said:

"The petitioner was under no obligation to make such requirement unless the services to be performed by the contractor and his employees were such as would constitute them a part of the business, trade, or occupation in which the petitioner was engaged."

It is pointed out that the Act (section 13349, O.S. 1931, as amended, 85 O.S. 1951 §2) did not, at the time of the decision in the Chickasha Cotton Oil Company, include those engaged in hauling and truck business in a class designated as "hazardous" by the act. The point may be conceded but the case was not decided upon that point, but the court's decision was based upon the proposition that the Cotton Oil Company was not obligated to require Dalrymple to carry workmen's compensation insurance "unless the services to be performed by him and his employees were such as would constitute them a part of the business, trade, or occupation in which the Cotton Oil Company was engaged." The Cotton Oil Company, as a ginner of cotton, was then under the Act and under section 11 would have been liable if it had not required Dalrymple to provide the insurance, but, as we have pointed out, the nonliability of the Cotton Oil Company was not decided upon that point.

In Amerada Petroleum Corporation, supra, Amerada contracted for the painting of certain oil and gas lease dwellings belonging to it. During the performance of said work and labor an employee of the painting contractor fell from a ladder and was injured. The injured workman sued Amerada for compensation under section 11. This court, in holding that Amerada was a third party and that section 11 could not be properly invoked against it, in the opinion, stated:

"In Standard Savings & Loan Association v. Whitney et al., 184 Okla. 190, 86 P. 2d 298, and Haas v. Ferguson, 184 Okla. 279, 86 P. 2d 986, we held that an employer employing an independent contractor in a hazardous undertaking not carried on by the employer for pecuniary gain, and which was not a part of or process in a hazardous business in which the principal employer was engaged, was not obligated or bound by the provisions of section 11, supra, to require compliance with the compensation laws by such independent contractor, and was not liable for injuries sustained by an employee of such independent contractor."

Cases from other courts sustain us in this view, although their statutes vary in their phraseology. We find that the Kansas court, in Lehman v. Grace Oil Co., 151 Kan. 145, 98 P. 2d 430, construed their Workmen's Compensation Act which in essential features are comparable to section 44 of the Oklahoma Act. In that case the court said:

"The theory of the compensation law is that industry shall bear the burden of compensating workmen for injuries sustained in hazardous employment and that each employer, subject to the act, shall be liable in compensation for accidents arising out of and in the course of employment in his particular trade or business."

Defendant contends that in any event the court's judgment should be vacated because he was prevented from proving the proceedings had before the State Industrial Commission, especially the receipt by plaintiff of the full compensation provided for under the Act.

If the trial court had jurisdiction of the cause of action upon which the present judgment is based, the disposition of the proceedings before the Industrial Commission are incompetent and irrelevant. This for the reason as we pointed out in Parkhill Truck Co. v. Wilson, 190 Okla. 473, 125 P. 2d 203. A recovery under the Workmen's Compensation Act does not bar an action based upon negligence of a third party (section 44 of the Act).

The cardinal point of the decision is that section 44 of the Act applies only to the injured workman, his employer and insurance carrier; it does not affect the liability of a negligent third

party and furnishes no defense to a common-law action based on negligence against a third party by a workman injured in the course of his employment and covered by the Workmen's Compensation Act.

We therefore pointed out that:

"It was never intended by the Legislature by the enactment of the Workmen's Compensation Act to abrogate, modify, or in any way affect the common-law right to exact payment of a negligent third party or tortfeasor."

We further said:

"The Workmen's Compensation Act was not enacted by the Legislature for the benefit and protection of a negligent third party, nor does it purport to increase or decrease such third party's liability under the common law for negligence."

It is no concern of a negligent third party what arrangement is between the injured employee on the one hand and his employer and insurance carrier on the other. In no event will the negligent third party be required to pay a greater amount than reasonably represents the injuries which he inflicted by his wrongful acts; this amount he should pay.

The Workmen's Compensation Act of Kansas contains a provision in all substantial respects comparable to our section 44. That court held, in the Lehman case, that an employee could recover under the Workmen's Compensation Act against his immediate employer for compensation, and also maintain an action at common-law against a third party responsible for the injury.

The crux of the decision is that the fact the employee had received compensation from his employer is not a defense to the action for damages arising in tort, nor can that fact be shown by defendant upon the trial of the action for damages arising out of the negligence of the third party.

The decision cites with approval Parkhill Truck Co. v. Wilson, supra, and cases from Kentucky, Nebraska, Pennsylvania, and Federal cases arising under Workmen's Compensation Acts of the States of Texas and New York.

Finding no error in the record, the judgment of the trial court is affirmed.

HALLEY, V.C.J., and WELCH, CORN, JOHNSON, and BINGAMAN, JJ., concur. GIBSON, J., dissents.

GIBSON, J. (dissenting). In order to reach its conclusion the majority opinion attempts to distinguish this case from Mid-Continent Pipe Line Co. v. Wilkerson, 200 Okla. 335, 193 P. 2d 586; Deep Rock Oil Corp. v. Howell, Judge, 200 Okla. 675, 204 P. 2d 282, and Jordon v. Champlin Refining Co., 200 Okla. 604, 198 P. 2d 408. There is no distinction in principle and, in my opinion, the attempt to create one will merely lead to confusion in the law.

It is stated in the opinion that this case is controlled by our decisions in Chickasha Cotton Oil Co. v. Strange, 186 Okla. 136, 96 P. 2d 316; Amerada Petroleum Corp. v. Vaughan, 200 Okla. 226, 192 P. 2d 639, and Parkhill Truck Co. v. Wilson, 190 Okla. 473, 125 P. 2d 203. The differences between the cited cases and the case at bar are so obvious that I feel it unnecessary to point them out here.

Rota-Cone Oil Field Operating Co. v. Chamness, 197 Okla. 103, 168 P. 2d 1007, upon which reliance is had, is also not in point, for the reasons stated, and approved by this case in Mid-Continent Pipe Line Co. v. Wilkerson, supra.

Furthermore, the plaintiff in this action sought and recovered an award for his disabilities from Lee Way Motor Freight, Inc., and then in this action sought and recovered a judgment for the same disabilities from the defendant.

In Parkhill Truck Co. v. Wilson, supra, this court said:

"* * * In no event, with or without election, with or without assignment, with or without the payment of compensation during the time the common-law action for negligence is being pros-

ecuted, can the injured employee have the benefits of double compensation."

As I read the record of the trial, there were other errors committed by the trial judge sufficient to cause a reversal of the judgment, but the majority opinion does not stress them, so I shall not do so.

I respectfully dissent.